The **TRAVELERS INSURANCE COMPANY,**
Petitioner,

v.

**Virgil Albert BROWN, Respondent.**

No. A-11186.

Supreme Court of Texas.

April 27, 1966.

Rehearing Denied June 1, 1966.

Atchley, Russell, Hutchinson & Waldrop, Texarkana, for petitioner.

Old & Moye, Mt. Pleasant, for respondent.

CALVERT, Chief Justice.

Virgil Albert Brown sued Travelers Insurance Company for benefits under "Coverage C" of a policy of insurance issued by Travelers to Ranch Managements, Inc. Trial to a jury resulted in a verdict for plaintiff on the contested fact issues. The trial court rendered judgment for the plaintiff for $3,679.00, and the Court of Civil Appeals affirmed. 396 S.W.2d 425. We affirm.

The only questions presented in the Court of Civil Appeals were questions of law. Instead of procuring a statement of facts for appeal purposes, the parties prepared, signed and filed a stipulation of relevant facts evidently deemed by them to be adequate to obtain appellate review of the law questions they wished to have decided.

We will summarize the stipulated facts. Brown, an employee of Ranch Management, Inc., sustained an accidental injury to his left arm on June 18, 1962, while in the course of his employment as an agricultural worker. As an agricultural worker, Brown was excluded from benefits under the Texas Workmen's Compensation statutes, and any right he has to compensation benefits derives from "Coverage C" as that coverage is provided in Policy No. UB9874141 issued by Travelers to Ranch Management, Inc.

Coverage C is provided in an endorsement titled "VOLUNTARY COMPENSATION ENDORSEMENT," the relevant provisions of which are as follows:

"1. Insuring Agreement I of the policy is amended by adding thereto an additional coverage as follows:

"Coverage C—Voluntary Compensation. To pay on behalf of the insured, if any employee within a group of employees hereinafter described shall sustain injury, including death resulting therefrom, while employed by the insured in operations in a state specified opposite the description of such group of employees, under circumstances which would have rendered the insured liable for compensation if the injured employee and the insured had been subject to the workmen's compensation law hereinafter designated with respect to such employment, an amount equal to the compensation and other benefits which would have been payable under such law had the injured employee and the insured been subject to such law with respect to such employment." [1]

"2. * * *

"3. * * *

"4. * * *

"5. If any person entitled to payment under Coverage C shall refuse to accept such payment and to comply

---

[1] This provision is not in the stipulated facts, but is taken from a copy of the policy which appears in the transcript.

with the terms and conditions set forth above or if any person shall commence any proceedings at law, in equity or in admiralty, except for such payment, seeking damages from the insured or the company on account of such injury, the company's liability under Coverage C with respect to such injury is thereupon terminated."

Sometime after August 22, 1962, and prior to April 9, 1965,[2] Brown filed a common law action for damages against Ranch Management, Inc., but the suit was dismissed with prejudice on September 10, 1963, three days before Travelers' motion for summary judgment in this case was to be heard. Brown's attorney was advised by the Industrial Accident Board, on or about August 22, 1962, that the insurer had voluntary compensation coverage on the employer, but neither Brown nor his counsel knew the actual contents of the policy until after the common law damage suit was filed against the employer.

In addition to its motion for summary judgment, Travelers urged a motion for instructed verdict at the close of the evidence, and, thereafter, a motion for judgment notwithstanding the jury's findings that Brown's injury was the producing cause of temporary total and permanent partial loss of use of his left arm. The last motion was based in part on the narrow ground that when Brown filed the common law damage suit against Ranch Management, Inc., he "commenced" a "proceeding at law * * * seeking damages from the insured" within the meaning of paragraph 5 of Coverage C, and that by virtue of the provisions of that section the company's liability was "thereupon terminated." All were overruled by the trial court. The same argument was urged in the Court of Civil Appeals. That Court also rejected the argument; it agreed, in-

stead, with the contention of Brown that after learning the contents of the policy, he had a right to elect whether to seek damages from the employer or to seek from Travelers the compensation benefits provided in the policy, and that the mere institution of the suit for damages, not prosecuted to judgment, did not constitute a binding election.

 We disagree with the conclusion of the Court of Civil Appeals. The contract of insurance between Travelers and Ranch Management, Inc., was a contract for the benefit of third persons, unregulated by the Workmen's Compensation Law. The right of Brown to benefits provided in the policy is conferred and limited by the terms of the contract. In Western Union Telegraph Co. v. Douglass, 104 Tex. 66, 133 S.W. 877, 879 (1911), we said: "A plaintiff who sues upon a contract executed by another for his benefit, must, of course, accept the contract as it was made. He alleges its execution as a part of his case, and must succeed or fail upon its provisions * * *." Section 5 of Coverage C expressly provides that "if any person shall *commence*[3] any proceedings at law * * * seeking damages from the insured * * * the company's liability under Coverage C * * * is thereupon terminated." The provision does not allow of an election; it *terminates* the liability of the insurer *if a suit for damages is commenced.*

The one case cited by the Court of Civil Appeals in support of its holding is not in point. In Leonard v. Hare, 161 Tex. 28, 336 S.W.2d 619 (1960), the factual situation was the reverse of the situation in this case. There, the workman, while mentally incompetent, executed an instrument releasing his employer from liability and accepting benefits under the voluntary compensation provision of an insurance contract. Later he brought suit to set aside the release and to recover damages from his employer

2. Evidently the parties meant this date to be April 9, 1963, the date of the filing of the instant suit, and we will so treat it.

3. Emphasis ours throughout unless otherwise indicated.

for tortious negligence. Election of remedies was urged as a defense. There was no provision in the policy that acceptance of benefits under the policy would terminate the liability of the employer for damages for negligence. And even had there been, the workman's mental incompetence would have avoided the legal effect of the provision.

But we do not agree with Travelers that its liability on the policy was terminated when Brown *filed his suit* for damages. The words "commence a proceeding" or "commence a suit or action," are not always so narrowly construed.

Travelers' contention that Brown "commenced" a proceeding against the insured within the meaning of the policy provision when he filed his suit, is based upon Rule 22, Texas Rules of Civil Procedure, and a dictionary definition of the word "commence." Rule 22 reads: "A civil suit in the district or county court shall be commenced by a petition filed in the office of the clerk." Webster's Third New International Dictionary defines "commence" as "1: to enter upon; BEGIN, START * * * 2: to initiate formally by performing the first act of (—legal proceedings) * * *."

█ It is not the purpose of Rule 22 to define parties' contractual rights; its purpose is to prescribe *how* a suit in a district or county court shall be commenced. While the wording of the Rule may also ordinarily govern *when* a suit is commenced, the real question before us is what the parties intended when they used the phrase, "commence any proceeding at law," in their contract. Ultimately, that question is to be decided by looking to the language of the contract; and if the phrase may reasonably be said to have more than one meaning, by looking to the purpose to be accomplished by the provision.

The meaning ascribed to "commence" by the dictionary is not the only reasonable meaning of the word when it is used to re-

fer to the beginning of a legal proceeding. It has different meanings in different jurisdictions, and even different meanings in different legal proceedings in the same jurisdiction. See 1 Am.Jur.2d 646–650, Actions, §§ 126–130; 1 C.J.S. Actions § 129, pp. 1396–1404; 7A Words and Phrases, pp. 397–438; 1 Tex.Jur.2d 545–548, § 39. By way of example that the dictionary meaning is not the only meaning, the Supreme Court of the United States held in Herb v. Pitcairn, 325 U.S. 77, 65 S.Ct. 954, 89 L.Ed. 1483, 1487–1488 (1944), that a suit was "commenced" within the limitation provision of the Federal Employers' Liability Act "when instituted *by service of process* issued out of a state court."

Decisions of courts of other jurisdictions may be put aside. In spite of the wording of Art. 1971, Vernon's Texas Civil Statutes, which was repealed when incorporated in Rule 22, this Court has often held that the commencement of a suit or action requires something more than the mere filing of a petition. In Russell v. Taylor, 121 Tex. 450, 49 S.W.2d 733, 737 (1932), we recognized that "the mere physical filing of a petition" without "a bona fide intention * * * to obtain service and prosecute the suit" was not sufficient to abate a second suit involving the same parties and issues. See also V. D. Anderson Co. v. Young, 128 Tex. 631, 101 S.W.2d 798, 800 (1937). We held in Owen v. City of Eastland, 124 Tex. 419, 78 S.W.2d 178, 179 (1935), that the mere filing of a petition "is not all that is required to 'commence'" a suit within the meaning of Art. 5529 which requires that certain suits "be brought within four years next after the right to bring the same shall have accrued." See also Ricker v. Shoemaker, 81 Tex. 22, 16 S.W. 645 (1891). In August Kern Barber Supply Co. v. Freeze, 96 Tex. 513, 74 S.W. 303, 305 (1903), we recognized that "[t]he issuance of citation in a justice's court is the *commencement* of the suit," but we held that "[t]he issuance of process which cannot possibly bring the defendant before the court cannot be considered the

*commencement of a suit."* These cases are not cited as controlling authority in the instant case but as illustrating that the mere filing of a petition does not always fulfill even statutory requirements for "commencement" of a suit.

In Owen v. City of Eastland, supra, we justified our holding that the mere filing of a petition did not constitute the "bringing" or "commencement" of a suit by the purpose for which statutes of limitations are enacted; and, quoting from Gautier v. Franklin, 1 Tex. 732 (1847), we said that "limitation statutes should 'receive such interpretation consistent with their terms, as would defeat the mischief intended to be suppressed, and advance the policy and remedy they were designed to promote.'" 78 S.W.2d 179. The same rule should be followed in interpretation of the contract in this case.

To hold that the mere filing of a suit is the "commencement" of a proceeding at law within the meaning of paragraph 5 of Coverage C would serve no purpose except to nullify the contract. The filing of a petition and its withdrawal within minutes thereafter cannot prejudice the rights of either the insured or the insurer. Neither can the filing of a petition which is allowed to remain on file without further action calling on the employer to account to the injured workman in damages. We therefore hold that the workman does not *"commence* proceedings * * * seeking damages from the insured or the company" within the meaning of paragraph 5 until citation is issued and served on the defendant or he enters a voluntary appearance for the purpose of defending the suit. The only purpose of the provision which occurs to us is to avoid the necessary expenditure of time and money in preparing to defend a damage suit only to be required thereafter to make compensation payments or to expend further time and money in the defense of a suit in which the issues are entirely different. The meaning we have given the provision will satisfy that purpose. Travelers suggests no other purpose.

We return to the record in this case and to the judgment to be entered. As heretofore noted, the parties did not procure or file a statement of facts or transcript of the evidence in the Court of Civil Appeals. Counsel for Travelers stated in oral argument before this Court that an answer had been filed in the damage suit, depositions had been taken therein, and the case had been prepared for trial before its dismissal. While we do not question the truth of counsel's statement, the case must be decided on the record before the Court; and there is nothing in Travelers' motion for summary judgment, motion for instructed verdict or motion for judgment notwithstanding the jury's verdict, alleging that anything was done in the damage suit beyond the filing of it. More to the point, the stipulation of facts, on which this Court must decide the questions before it, recites only that before the filing of this suit plaintiff "filed a suit" for common law damages against Ranch Management, Inc., which suit was later dismissed, and that the two suits grew out of and were based upon the same transaction or occurrence.

One who is relieved of his contractual obligations by a contingent event or occurrence has the burden of proving the happening of the event or occurrence. Wooters v. International & G. N. R. R. Co., 54 Tex. 294, 299 (1881). There is nothing in the record to show that Travelers proved that citation in the damage suit against Ranch Management, Inc., was ever issued and served, or that it voluntarily entered its appearance in the suit. Moreover, the burden is on one appealing from an adverse judgment of a trial court to show that the judgment was erroneously rendered and entered. This rule was correctly announced by the Court of Civil Appeals in Nagelson v. Fair Park National Bank, 351 S.W.2d 925, 929 (1961), writ refused, no reversible error. Since there is nothing in the record to show issuance of citation in the damage

suit and service thereof on the defendant therein, or that a voluntary appearance was entered by the defendant, Travelers has not discharged its burden of showing that the trial court erred in rendering and entering judgment for the plaintiff in this case.

The judgments of the trial court and Court of Civil Appeals are affirmed.