**Delbert L. JACKSON, Petitioner,**

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY,**
**Respondent.**

**No. C–3434.**

Supreme Court of Texas.

April 17, 1985.

Rehearing Denied May 29, 1985.

Menaker and Huffman, Mark Huffman, Dallas, for petitioner.

Robert M. Greenberg, P.C., Hollye C. Fisk, Dallas, for respondent.

SPEARS, Justice.

This is a suit for recovery under the Workers' Compensation Act. Tex.Rev.Civ. Stat.Ann. arts. 8306–8309i (Vernon 1967 & Supp.1985). The issue before us is whether the trial court misinterpreted certain jury findings and thus understated the recovery due the claimant, Delbert Jackson. The jury findings in question concern the degree to which Jackson's incapacity resulted from prior injuries not compensable in this action. The court of appeals affirmed the trial court judgment. 675 S.W.2d 341. We affirm the judgments of the courts below.

Delbert Jackson brought a claim for compensation under the Workers' Compensation Act for disabling injuries to his left hand sustained on September 14, 1981. The injury in question allegedly severed Jackson's ring finger and damaged his small and middle fingers, and the jury found that the injury extended to and affected his hand. The insurer, United States Fidelity & Guaranty Company (U.S.F. & G.), alleged that the incapacity extending to Jackson's hand was caused by two prior injuries to his left thumb, one occurring in October 1980 and one in March 1981. The jury found that Jackson sustained 25% permanent partial loss of use of his left hand, a specific injury compensable under article 8306, section 12. The jury also found that the two prior thumb injuries and the finger injury all contributed to the 25% incapacity.

The parties agree that under article 8306, section 12c, U.S.F. & G. is not liable for the incapacity resulting from the prior thumb injuries; however, the parties disagree over the extent of these prior injuries. The following special issues relevant to this dispute were submitted without objection.

SPECIAL ISSUE NO. 8.

Find from a preponderance of the evidence the degree of such partial loss of use of Delbert Jackson's left hand.

Answer by giving the percentage of loss of use.

ANSWER: <u>25%</u>.

SPECIAL ISSUE NO. 10.

Find from a preponderance of the evidence the percentage, if any, that Delbert Jackson's injury to the left thumb in or about October, 1980, has contributed to the incapacity found by you.

Answer by giving a percentage, if any.

ANSWER: <u>2½</u>.

SPECIAL ISSUE NO. 13.

Find, from a preponderance of the evidence, the percentage, if any, that the injury to Delbert Jackson's left thumb in or about March, 1981, has contributed to the incapacity found by you.

Answer by giving a percentage, if any.

ANSWER: <u>10%</u>.

The precise question presented is whether the meaning of these special issues is that Jackson's 25% incapacity was caused:

(1) half by prior injuries and half by the subsequent compensable injury, or

(2) 12½% by prior injuries and 87½% by the subsequent compensable injury, or whether

(3) the special issues are ambiguous and subject to either interpretation above.

The trial court judgment awarded Jackson a recovery for 12½% incapacity obvi-

ously premised on the interpretation that Jackson's 25% incapacity was caused half by prior injuries and half by the subsequent injury. The court of appeals agreed with this interpretation and alternatively held that if the issues were ambiguous, the trial court judgment should be affirmed since Jackson has not brought forward the statement of facts on appeal. Jackson argues that these quoted jury findings clearly and unambiguously show that only 12½ % of the 25% incapacity was contributed by prior injuries, and therefore his recovery should have been for 87½% of the 25% or 21.875% incapacity.

In summary, of the three alternatives set forth above, the trial court has applied number 1; the court of appeals has chosen number 1, or alternatively, number 3; and Jackson urges that number 2 is the clear and irresistible import of the jury findings. We must examine these interpretations under the language of the special issues, and we will begin with interpretation number 1.

It is important to note at the outset that in special issues 10 and 13 the word "of" never appears after the word "percentage." Therefore, the jury was never told that their answer should be expressed as a percentage *of* the 25% incapacity. They were told only that the answer should be the percentage that the prior injuries *contributed to* the 25% incapacity.

In special issue no. 8 the jury found that the degree of partial loss to Jackson's hand was 25% loss of use. In surrounding issues, the jury found that the two prior injuries and the subsequent injury all contributed to this 25% loss of use. In special issues 10 and 13, the jury was asked what percentage the prior injuries contributed to the 25% incapacity. A reasonable interpretation of these issues would allow the jury to answer in terms of an additive contribution, thereby finding that out of the combined total of 25% loss of use, 12½% was contributed by prior injuries and 12½% by the subsequent injury of September 14, 1981. Restating the issues and answers of the jury as an affirmative statement, it fairly reads, "The prior injuries have contri-

buted 12½% to the 25% loss of use." Again, in the absence of any express direction as to what "the percentage" in issues 10 and 13 is to be taken of, a reasonable interpretation of this statement is that the prior injuries contributed 12½% loss of use to the 25% combined loss of use from all injuries. Therefore, interpretation number 1 is reasonable.

Interpretation number 2, which Jackson urges, is that "the percentage" refers to a percentage *of* the incapacity found by the jury. The jury, having been asked to find the percentage that prior injuries contributed *to* the 25% incapacity, could have inferred that their answer should be expressed as a percentage *of* the 25% incapacity found by them. Such an application would clearly call for a multiplication of the 12½% contributed by prior injuries with the 25% incapacity to find that 3.125% loss of use resulted from prior injuries and 21.875% loss of use resulted from the injury for which compensation is sought. Therefore, interpretation number 2 is reasonable.

■ Jackson argues that this is the only proper interpretation because the issues are clear and unambiguous; however, in the absence of any express direction as to what the percentages in special issues 10 and 13 are to be taken of, we cannot agree. The issues submitted in this case, although susceptible to the interpretation urged by Jackson, do not demand that interpretation, and do not foreclose the additive interpretation given by the courts below. For the foregoing reasons we hold that the findings in special issues 10 and 13 are ambiguous. The jury was not told the proper way to state its answers, and two reasonable interpretations exist as to the meanings of the findings.

Jackson challenges this holding by asserting that it could yield absurd results. He argues that if the jury had found a 50% contribution by prior injuries, this court would allow subtracting 50% from 25% thus giving the claimant recovery for a negative 25% loss of use. As stated earlier, there are two reasonable interpretations

as to the meaning of the jury's answers in this case. Had the jury answered "50%" to the issues, the interpretation actually applied by the jury would have readily been known, and the trial court would clearly have been in error to interpret the answer as was done in this case. Unfortunately, the answers given in this case do not help resolve the ambiguity.

Jackson urges that the cases of *Consolidated Casualty Insurance Co. v. Jackson,* 419 S.W.2d 232 (Tex.Civ.App.—Houston [14th Dist.] 1967, writ ref'd n.r.e.) and *Aetna Casualty & Surety Co. v. Depoister,* 393 S.W.2d 822 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n.r.e.) support the conclusion that the percentage of incapacity should have been multiplied by the percentages found in special issues 10 and 13. In *Consolidated Casualty,* the special issues submitted to determine the extent of prior injuries were virtually identical to those in the present case. The partial incapacity, however, was a general injury, instead of a specific injury as in this case. In general injury cases, partial incapacity is found by the jury *in dollars and cents* by subtracting the average weekly earning capacity after the injury from the average weekly wage before the injury. 419 S.W.2d at 236. Therefore when asked the percentage that prior injuries contributed to the partial incapacity, the jury's answer could fairly be restated as "The prior injuries contributed 25% to the $50.00 incapacity." *See* 419 S.W.2d at 236. The ambiguity disappears in the general injury case because it is impossible for percentages to additively contribute to dollars and cents. In contrast, the finding in this case that "the prior injuries contributed 12½% to the 25% incapacity" may be interpreted as an additive contribution.

All of the cases cited by the dissent using similar prior injury issues are general injury cases. The dissenting opinion's reliance upon general injury cases using the same prior injury issue is misplaced for two reasons. First, for the reasons just mentioned, no one contends that these issues would be ambiguous in a general injury case. Second, as naturally follows, these issues were not contested as ambiguous in those cases. Just because the issues have been used successfully in some situations does not automatically mean they will work in all cases.

We are mindful that the issues submitted to determine the contribution of prior injuries were taken from 2 *State Bar of Texas, Texas Pattern Jury Charges* PJC 25.05 (1970). Regardless of how long these issues have been contained in the *Texas Pattern Jury Charges,* they have never before been used in any reported specific injury case, and no Texas appellate court has ever before addressed the issue in this case, either impliedly or expressly, in holding or in dicta. *See* T. Korioth & F. Southers, *Texas Workers' Compensation Desk Book* 147 (1980) ("There have been no cases concerning the calculation of any contribution regarding specific injuries.").[1]

Jackson acknowledges the distinction between general and specific injury cases, but argues that the same calculation rules should be applied in each case to achieve uniformity. While this court has no disagreement with a calculation method such as that urged by Jackson, an unambiguous issue must still be submitted to the jury which informs them of the proper way to express their fact findings.

Jackson also argues that the trial court's calculation violates the well established rule that the Workers' Compensation Act should be liberally construed in favor of the claimant. *See Stott v. Texas Employers Ins. Ass'n,* 645 S.W.2d 778, 780 (Tex.1983). This case, however, involves a determination of the facts, rather than the

---

1. In arguing that general injury cases should not be distinguished, the dissent .quotes *Sowell v. Travelers Insurance Co.,* 374 S.W.2d 412, 416 (Tex.1963), saying "[s]ection 12c makes no distinction between specific and general injuries, and we are unwilling to write such a distinction into the statute." In context, the court was merely holding that the insurer was entitled to a reduction for prior injuries regardless of whether the prior injury was specific or general, a point totally unrelated to any question here.

law. The issue before us is the factual question of the extent of Jackson's prior injuries. Article 8306, section 12c of the Act provides that "the association shall be liable because of such injury only for the compensation to which the subsequent injury would have entitled the injured employee had there been no previous injury ...." The Act does not specify how the issue should be phrased or whether the prior injury should be expressed as a percentage of loss of use or as a percentage of partial incapacity. Therefore, the act itself offers nothing to resolve this case, and the rule of liberal construction certainly does not authorize liberally construing ambiguous fact findings in favor of the claimant.[2]

█ Having held that the issues were susceptible to the interpretations of both Jackson and the courts below, the law is clear that we must affirm the judgments below in this case. Several well established rules require this result. First, an appellant has the burden to show that the judgment of the trial court was erroneously rendered and entered. *Travelers Insurance Co. v. Brown*, 402 S.W.2d 500, 504 (Tex.1966). Second, if the jury findings are ambiguous or unclear, the appellate courts must try to interpret the findings so as to uphold the judgment. *First Federal Sav. & Loan Ass'n v. Sharp*, 359 S.W.2d 902, 903 (Tex.1962). Moreover, Jackson, the petitioner here and appellant below, has not brought forward the statement of facts on appeal. In *State v. Hale*, 136 Tex. 29, 146 S.W.2d 731, 739 (1941), this court held:

> The rule is well established that when the findings on special issues are ambiguous, in order to arrive at their proper interpretation the court may examine not only the issues submitted, but also the pleadings and the evidence; and after an examination of such pleadings and evidence the intention of the verdict can be · ascertained. Such verdict so construed

constitutes the proper basis for a judgment.

We also recognize the rule that the trial court may not merely speculate as to the jury's true intent. But in the absence of a statement of facts, we do not know and cannot hold that the trial court resorted to speculation. To so hold would require us to *presume* the trial court erred, without any way of knowing.

█ It is clear that Jackson has not sustained his burden to show error in the trial court judgment. Accordingly, we affirm the judgments of the courts below.

Dissenting opinion by KILGARLIN, J., in which WALLACE and ROBERTSON, JJ., join.

KILGARLIN, Justice, dissenting.

I must dissent. On the basis of a supposed ambiguity of answers, this court nullifies a long-used and approved special issue. Not only will this holding befuddle the bench and bar as to how to submit contribution for prior injuries in worker's compensation cases, the opinion is bound to perplex grammarians and mathematicians alike. Moreover, not since the want of a nail/shoe/horse led to Louis XII's loss of Italy to Henry VIII in the Battle of the Spurs, has something as inconsequential as the want of an "of" produced such a momentous result.

In *Fidelity & Casualty Company of New York v. Shores*, 329 S.W.2d 911, 914–15 (Tex.Civ.App.—Fort Worth 1959, writ ref'd), this court approved the statement, "[t]o construe the Workmen's Compensation Act or any part thereof, where there is room for construction, so that absurd consequences would be the necessary result should be avoided." Yet, the majority approval of the trial court formula of subtracting percentages, rather than multiplying them as should be done, will lead inevitably to such consequences. For example,

---

2. The dissenting opinion also relies on the rule of liberal construction of the Act, citing *Texas Employers Insurance Ass'n v. Holmes*, 145 Tex. 158, 196 S.W.2d 390 (1946). *Holmes* involved a calculation question completely removed from any factual ambiguity, and was clearly an interpretation of the statute itself. We, on the other hand, are trying to determine the extent of Jackson's prior injuries, a purely factual matter.

should the jury have answered that the combined effects of the two prior thumb injuries had contributed 25% to the present incapacity, then 25% subtracted from 25% would leave 0%. The 25% contribution would thus be transposed into 100% of the current disability. But to really demonstrate the potential for absurd results, let us suppose that the jury had found that the two prior thumb injuries had contributed 50% of the incapacity found by them. How does one go about subtracting 50% from 25%, as the majority would have us do under its approved formula? The only way to avoid the consequences envisioned in *Shores* is to multiply the percentage of present incapacity by the percentage that the prior injuries contributed to that incapacity.

The majority's answer to this is that if "the jury answered 50% to the issues, the interpretation actually applied by the jury would have been readily known, . . ." 689 S.W.2d at 411. I submit sheer chaos will result if we start allowing trial judges to second guess juries. Such a rule can never be workable. Let us assume that in different cases two juries each find 50% loss of use with contribution of 25% from prior injuries. Judge A says the jury meant 25% as being one-half of 50%. Judge B says the jury meant 25% as being one-fourth of 50%. Under the majority holding, both judgments would be affirmed. Such simply cannot be. Trial judges are not to be permitted to interpret jurors' intent. *Northern Texas Traction Co. v. Armour & Co.*, 116 Tex. 176, 288 S.W. 145 (1926). As was said in *Moore v. Moore*, 67 Tex. 293, 297, 3 S.W. 284, 286 (1887), "as to the true construction of such a verdict, neither the lower court nor this court is permitted to speculate."

We cannot posit as a rule of construction a holding that would permit both multiplication and subtraction as a judge may see fit. Certainty of the law demands that we either approve one formula or the other, and there is no question that multiplication, not subtraction, is the proper computation method. *See, e.g., Consolidated Casualty Insurance Co. v. Jackson*, 419 S.W.2d 232,

236–37 (Tex.Civ.App.—Houston [14th Dist.] 1967, writ ref'd n.r.e.); *Aetna Casualty & Surety Co. v. Depoister*, 393 S.W.2d 822, 829 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n.r.e.); and, *Jones v. Travelers Insurance Co.*, 374 S.W.2d 779, 782 (Tex. Civ.App.—Beaumont 1964, writ ref'd n.r. e.).

The majority, while conceding that the special issues submitted in *Consolidated Casualty* were virtually identical to those submitted here, attempts to distinguish that case from this one by saying that *Consolidated Casualty* was a general injury case. While that may be true, it makes no difference. The right of contribution stems from the provisions of Tex.Rev.Civ. Stat.Ann. art. 8306, § 12c. Speaking for this court in *Sowell v. Travelers Insurance Co.*, 374 S.W.2d 412, 416 (Tex.1963), former Chief Justice Greenhill stated, "[s]ection 12c makes no distinction between specific and general injuries, and we are unwilling to write such a distinction into the statute."

The majority admits that the special issues used in this case were taken verbatim from 2 *State Bar of Texas, Texas Pattern Jury Charges* PJC 25.05 (1970). The pattern jury charge issue is substantially the same as the one contained in 11 *Stayton Texas Forms* § 7005, no. 23 (1962), which states, "[f]rom a preponderance of the evidence find what percentage the injury of (date) contributed to the disability, if any, of Plaintiff's (specific member) previously found by you. Answer in terms of percentage." Likewise, the pattern jury charge is similar to the issue recommended in J. Garey, *Handling a Workmen's Compensation Claim* 127 (1968), which reads, "What do you find from a preponderance of the evidence to be the percentage of incapacity resulting solely from the prior job injuries of ————, 19—— and ————, 19——? Answer in percentages."

Nor does the pattern jury issue differ substantially from the issue recommended by Charles J. Lieck, Sr. in *Lieck's Legal Trial Aid* (p. 286 in 1951 ed. and pp. 386–87 in 1959 ed.), which reads, "what do you

find, from a preponderance of the evidence, to be the percentage that such prior injury has contributed, if any, to plaintiff's incapacity, if any? Answer by stating a percentage." It should be noted that none of the form issues incorporate the word "of" after the word "percentage." Moreover, as the comment to 2 *State Bar of Texas, Texas Pattern Jury Charges* PJC 25.05 observes, its recommended form of submission is used in *St. Paul Fire and Marine Insurance Co. v. Murphree*, 163 Tex. 534, 357 S.W.2d 744 (1962).

For the first thirty-odd years of the Worker's Compensation Act the contribution question was usually submitted in a form different from the *Pattern Jury Charges* suggestion. The formerly used issue inquired as to the percentage of present incapacity contributed solely by the injury made the basis of the current claim. *See, e.g., Texas Indemnity Ins. Co. v. Perdue*, 64 S.W.2d 386 (Tex.Civ.App.—Amarillo 1933, writ ref'd); *Texas Employers Insurance Ass'n v. Griffis*, 141 S.W.2d 687 (Tex.Civ.App.—Galveston 1940, no writ); *Traders and General Insurance Co. v. Watson*, 131 S.W.2d 1103 (Tex.Civ.App.—Eastland 1939, writ dism'd judgmt cor.).

In his treatise, Lieck argued that the use of the word "solely" was objectionable as it denied a claimant his right to recover for aggravation as contained in the statutory definition of injury. Twelve years later, using Lieck's reasoning, this court, in *Sowell v. Travelers Insurance Co.*, disapproved under the facts of that case, the issue, "[w]hat percentage of plaintiff's present incapacity * * * is attributable *solely* to the [injury made the basis of plaintiff's suit]" (emphasis in original). 374 S.W.2d at 414. Since then, the contribution issue has been routinely submitted as suggested by Lieck, Stayton, Garey, and the *Pattern Jury Charges*.

The majority discards a special issue that has been recommended, and subsequently approved, for over thirty-four years with the sole justification that an answer to the issue is susceptible to two different interpretations. The reason given for its finding of ambiguity is that there is no express direction "as to what the percentages in special issues 10 and 13 are to be taken of, ..." 689 S.W.2d at 410. Yet, nothing could be more plain. The jury was asked to find the percentage (an amount even the majority must concede is from zero to 100) the prior injury has contributed to 25% (the incapacity found). The submitted issue is gramatically correct, and most grade school mathematicians are sufficiently proficient to recognize that percentages are computed by multiplying the lesser part by the whole.

But even if the jury findings were ambiguous, that is an additional reason why this case should be resolved in favor of Delbert Jackson. The Worker's Compensation Act should be liberally construed to favor the claimant. The majority attempts to avoid this time-honored law of statutory construction by saying that fact findings do not count. While this may be the interpretation that the present majority now gives to the Worker's Compensation Act, it has certainly not always been so. In a case totally devoted to calculation of percentages, *Texas Employers Insurance Ass'n v. Holmes*, 145 Tex. 158, 196 S.W.2d 390 (1946), this court discussed at length the statutory construction policy of Texas courts. When the statutory language permits, the act is to be construed broadly and liberally, to favor the employee. *Holmes* traces in detail the authority for that proposition all the way back to the inception of the act, itself. Contrary to the conclusion of the majority opinion, the ambiguity, if indeed it is an ambiguity, is not in the jury answer, but in the construction the trial judge placed on the answer, which is a matter of law, entitling Jackson to a favorable construction.

Texas has had a worker's compensation statute for seventy years. But for a six year interlude, contribution has been a part of that law since article 8306, section 12c was adopted in 1917. Not until our holding today can a single case be found ever suggesting, much less holding, that the per-

centage of contribution from prior compensable injuries is to be subtracted from, as opposed to multiplied by, the current disability. With this condemning of the *Pattern Jury Charges* submission of the contribution percentage issue, I would respectfully inquire what are the trial bench and bar to do from this point forward? We are provided no answer by the majority opinion.

Although the statement of facts is absent, this court possesses as much information from the record forwarded in this case as did the court in *Texas Employers Insurance Ass'n v. Holmes* when it answered a certified question from the court of civil appeals as to how to calculate compensation in a situation of partial loss of use in a specific injury case. The *Holmes* court was able to do it. So should we.

Finally, we come to the matter of disposition of this cause. The majority says "[h]aving held that the issues were susceptible to the interpretations of both Jackson and the courts below, the law is clear that we must affirm the judgments below in this case." 689 S.W.2d at 412. The law is no such thing. In *Northern Texas Traction Co. v. Armour & Co.,* an ambiguous verdict resulted in a remand, with the statement "[w]e regard the verdict as being ambiguous to an extent preclusive of that certainty which ought to be a part of administration of the law." 288 S.W. at 146. No case cited by the majority as authority for rendition, least of all *State v. Hale,* 136 Tex. 29, 146 S.W.2d 731 (1941), stands for the proposition that ambiguity exists on the basis of a judge's subjective analysis of a jury verdict.

I would reverse the judgments of the courts below and render judgment that Delbert Jackson should have and recover compensation at the rate of $33.69 per week for the permanent partial incapacity of his hand.

WALLACE and ROBERTSON, JJ., join in this dissent.