Affirmed and Majority and Dissenting Opinions filed December 16, 2004









Affirmed and Majority and Dissenting Opinions filed
December 16, 2004.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-03-00987-CV

____________

 

RICHARD NIP A/K/A
NIP KAM MAN AND NIP LUNG KWAN, Appellants

 

V.

 

CHECKPOINT
SYSTEMS, INC.,
Appellee

 



 

On Appeal from the 281st
District Court

Harris County, Texas

Trial Court Cause No. 01-39671

 



 

M A J O R I T Y   O P I N I O N

In this breach of contract case, a jury
awarded appellee Checkpoint Systems, Inc. 
$2,565,500, plus interest and attorney’s fees against appellants Richard
Nip and Nip Lung Kwan.  The case arises
from a dispute over whether appellants complied with several material
provisions of a Purchase and Sale Agreement (“Agreement”), in which Checkpoint
agreed to purchase AW Printing, a business owned by appellants.  We affirm the trial court’s judgment.








Appellants challenge the legal and factual
sufficiency of the evidence to support the jury’s findings. They argue the
evidence is  insufficient to support the
jury’s findings that (1) appellants breached the Agreement, (2) Checkpoint
sustained any damages or that Checkpoint sustained damages in the amount of
$2,565,500 because that figure was based on unreliable expert witness
testimony, (3) Checkpoint established both the value of AW Printing if
appellants had complied with the terms of the Agreement and the actual value of
AW Printing at closing, and (4) appellants’ breach of the Agreement caused all
of the damages sustained by appellee. 

Legal and Factual Sufficiency
Claims

Standards of Review

When reviewing a “no evidence” or legal
sufficiency challenge, we view the evidence in the light most favorable to the
finding of disputed fact and disregard all evidence and inferences to the
contrary.  Kerr-McGee Corp. v. Helton,
133 S.W.3d 245, 254 (Tex. 2004).  If
there is more than a scintilla of evidence to support the challenged finding, a
legal sufficiency challenge must fail.  Wal-Mart
Stores, Inc. v. Canchola, 121 S.W.3d 735, 739 (Tex. 2003).  More than a scintilla of evidence exists if
the evidence furnishes some reasonable basis for differing conclusions by
reasonable minds about the existence of a vital fact.  Lee Lewis Constr., Inc. v. Harrison,
70 S.W.3d 778, 782–83 (Tex. 2001).

When considering a factual sufficiency
challenge, we consider all of the evidence, not just that which supports the
verdict.  Maritime Overseas Corp. v.
Ellis, 971 S.W.2d 402, 406–07 (Tex. 1998). 
We set aside the verdict only if it is so contrary to the overwhelming
weight of evidence as to be clearly wrong and unjust.  Id. at 407.  However, we may not assess the witnesses’
credibility or substitute our judgment for that of the jury, even if the
evidence would clearly support a different result.  Id.

Breach
of the Agreement








We first address
appellants’ argument that the evidence is legally and factually insufficient to
support the jury’s finding that they breached the Agreement.  Section 4.8 of the Agreement provides in
relevant part: “Except as set forth in Schedule 4.8, since July 14, 2000 (which
is the date the Parties entered into the letter of intent regarding the
purchase and sale of the Acquired Shares), the Acquired Company has operated in
the Ordinary Course of Business and there has not been any Material Adverse
Change with respect to the Acquired Company.” 
Section 1.1 of the Agreement defines Material Adverse Change (or Effect)
as

a change (or
effect) in the condition (financial or otherwise), properties, assets,
liabilities, rights, obligations, operations, business, or prospects which
change (or effect), individually or in the aggregate, adversely affects, or
could reasonably be expected to adversely affect, such condition, properties,
assets, liabilities, rights, obligations, operations, business, or prospects in
an amount equal to or greater than $50,000.   


Checkpoint presented evidence at trial
supporting the conclusion that a material adverse change in appellants’
business had occurred and that appellants had failed to disclose such a change
to Checkpoint prior to closing.  Jim
Cantrell, the West Coast branch manager for AW Printing, testified that his
company learned on the afternoon of January 3, 2001, less than one week prior
to the closing on January 9, that Gymboree, AW Printing’s second-largest
customer, was attempting to cancel all of its Asian orders and switch to a
printer located in Hong Kong or China. 
This fact was confirmed by the testimony of Rakesh Tandon, AW Printing’s
vice president and treasurer, who stated that he learned from appellant Richard
Nip that Gymboree had wanted to make a change in their supplier.  Jeff Balcombe, Checkpoint’s damages expert,
testified that there was a ninety-five percent change in revenue from 2000 to
2001 for AW Printing’s Far East factories. 
According to Balcombe, revenue from the Far East Gymboree business
during the year 2000 was $1,739,306; in 2001, revenue from the same dropped
dramatically to only $87,266.








Not only did appellants fail to disclose
the fact that Gymboree was attempting to cancel all of its Far East orders, but
appellants actively tried to conceal this fact from Checkpoint.  Tandon testified that appellant Richard Nip
instructed him not to mention any word of this to anyone, “not even to
Checkpoint,” because AW Printing did not want to stop the closing from going
through; besides, Nip had told Tandon he had “too much money committed in
investing in horses” for the deal with Checkpoint not to be consummated.  Nip later asked Tandon to prepare a
memorandum falsely showing that the decline in Gymboree business occurred after
the closing date.  Cantrell testified
that Nip had instructed employees of AW Printing to falsely reply, “YOUR ORDER
HAS ALREADY BEEN PRODUCED,” in response to any attempts by agents of Gymboree
to cancel its orders; this response would enable AW Printing to claim that it
had not received any cancellations from Gymboree because such cancellations had
not been accepted.

Based on the evidence above, a reasonable
finder of fact could conclude that the loss of AW Printing’s business with its
second-largest customer, Gymboree, was a material adverse change under the
Agreement because such a loss in future business prospects could reasonably be
expected to exceed the amount of $50,000. 

Appellants challenge this evidence by
claiming that there is no evidence that the value of Gymboree order
cancellations ever approached an amount totalling $50,000; they point to
Cantrell’s testimony that the sum total of the cancelled orders was less than
$15,000.  But this argument does not
address the future effect that the loss of Gymboree’s business could
reasonably be expected to have upon AW Printing’s business.  Appellants also argue, citing the testimony
of Cantrell, that Gymboree did not make such a dramatic decision to discontinue
the use of AW Printing’s services prior to the closing date because AW Printing
had received several new orders from Gymboree early in 2001.  They claim, citing the testimony of
Gymboree’s vice president of production, Michael Mayo, that the decision to use
companies other than AW Printing occurred in March 2001, which is after—not
before—the January 9, 2001 closing date. 
However, the sum of this testimony, while probative and perhaps even
persuasive on the issue of whether the loss of some quantity of AW Printing’s Gymboree
business constitutes a material adverse change prior to the closing date,
cannot be considered as overwhelming in relation to the weight of evidence
presented by Checkpoint.  Moreover, we
are not in a position to assess the credibility of the witnesses and cannot
substitute our judgment for that of the jury. 


We therefore find the evidence is legally
and factually sufficient to support the jury’s finding that appellants breached
the Agreement.     








Reliability of the Expert Witness
Testimony

We next address appellant’s arguments that
the evidence is legally and factually insufficient to support the jury’s award
of damages because it was based on unreliable expert witness testimony.
Appellants question the reliability of the testimony provided by Checkpoint’s
damages expert, Jeff Balcombe, because his methodology (1) leads to the “absurd
conclusion” that a reduction of 10.6% in AW Printing’s profits for only one
year resulted in a 27% reduction in the value of AW Printing, (2) wrongly
assumes that there is no possibility that AW Printing would ever replace the
decline in the year 2000 profits from Gymboree Far East factories with other
business, and (3) wrongly applies an earnings before interest and taxes
(“EBIT”) multiple, rather than a gross profits multiplier, in the calculation
of Checkpoint’s damages.  They further
contend that Balcombe’s methodology is unreliable because it (4) only utilizes
one year of data in the calculation of Gymboree Far East’s profits, (5) wrongly
assumes that Gymboree Far East would have purchased the same amount of product
it purchased in 2000 for each year thereafter, and (6) wrongly assumes that any
reduction in AW Printing’s EBIT would have reduced the price that Checkpoint
would have been willing to pay to the same degree.

In response to these contentions,
Checkpoint raises the defense of waiver, citing Coastal Transport Co. v.
Crown Central Petroleum Corp., 136 S.W.3d 227 (Tex. 2004).  In that case, the Supreme Court of Texas
stated:

We therefore
conclude that when a reliability challenge requires the court to evaluate the
underlying methodology, technique, or foundational data used by the expert, an
objection must be timely made so that the trial court has the opportunity to
conduct this analysis.  However, when the
challenge is restricted to the face of the record, for example, when expert
testimony is speculative or conclusory on its face, then a party may challenge
the legal sufficiency of the evidence even in the absence of any objection to
its admissibility.








Id. at 233. 
Based on this authority, we conclude that appellants were required to
present a timely objection to the trial court as to each of their contentions
listed above in connection with the reliability issue because each requires the
court to evaluate the underlying methodology and foundational data.

We must therefore determine whether
appellants have preserved each of their six contentions for appellate
review.  Appellants assert that all six
contentions were preserved through either their pre-trial motion to exclude, or
post-trial motion for judgment notwithstanding the verdict, motion for new
trial, and motion to modify judgment. 
However, any objection presented after the jury verdict has been
returned comes too late.  Ellis, 971
S.W.2d at 409–10.  We may therefore
consider only those contentions that were raised in appellants’ pre-trial
motion to exclude.

Appellants’ motion to exclude contained
only two arguments in relation to their claim that Balcombe’s testimony is
unreliable and therefore inadmissible. 
In that motion, they argued that Balcombe’s methodology incorporates two
erroneous assumptions: first, that Gymboree Far East had the same level of
business activity in 2001 as it had in 2000, and second, that AW Printing was
“doomed to lose all of Gymboree’s Far East business” as of the closing date.  Appellants have evidently abandoned the
second of these arguments in this appeal; however, the first of these arguments
was preserved by virtue of their motion to exclude and has been advanced again
in this appeal as contention (5) listed above.

Accordingly, we hold that contentions (1),
(2), (3), (4), and (6), as listed above, have been waived by appellants. See
Coastal Transport, 136 S.W.3d at 233. 
We thus find it necessary to evaluate the merits of only appellants’
fifth contention.[1]








In their fifth contention, appellants
argue the evidence is legally and factually insufficient to support the jury’s
damages award because Balcombe’s methodology wrongly assumes that Gymboree
would have purchased the same amount of product it purchased in 2000 for the
following year.[2]  We disagree. 
Appellants’ own damages expert, James M. Hill, testified that AW
Printing’s year 2000 profits provided a valid basis for forecasting its 2001
profits.  Moreover, Balcombe testified
that, in calculating the damages incurred by Checkpoint, he relied upon the
report compiled by PriceWaterhouseCoopers stating (according to Balcombe) that
“the major customer accounts were all expected to continue in 2001 at the same
levels as they had in 2000.  And Gymboree
was specifically identified as an account that management forecast[s] to do as
well in 2001 as it did in 2000.”  Because
Balcombe’s methodology incorporates an assumption supported by appellants’ own
evidence, as well as an independent third party’s finding, we find that
appellants’ fifth contention, which is the sole contention preserved for
review, is without merit.  We conclude
that the trial court did not err in its reliability finding; appellants’ legal
and factual sufficiency challenges to the damages award on this basis must therefore
fail.








Appellants separately argue the evidence
is legally and factually insufficient to support the jury’s verdict because (1)
Checkpoint failed to establish both the value of AW Printing if appellants had
complied with the terms of the Agreement and the actual value of AW Printing at
closing and (2) appellants’ breach of the Agreement did not cause all of the
damages sustained by Checkpoint. 
However, appellants’ contentions concerning these issues are strictly
confined to attacks upon the reliability of the methodology utilized by
Balcombe, Checkpoint’s damages expert, in reaching his conclusion as to the
proper amount of damages sustained by Checkpoint as a result of appellants’
breach.  Because we have already
addressed the reliability issue and found all of appellants’ properly preserved
contentions to be without merit, we find the evidence legally and factually
sufficient to support the jury’s damages and causation findings on these
grounds.[3]

Because we have found the evidence legally
and factually sufficient to support the jury’s verdict, we affirm the trial
court’s judgment.

 

/s/      Leslie Brock Yates

Justice

 

Judgment
rendered and Majority and Dissenting Opinions filed December 16, 2004.

Panel
consists of Justices Yates, Anderson, and Hudson (Anderson, J. dissenting).











[1]  While
appellants acknowledge that none of the waived contentions was mentioned in
their motion to exclude, they claim that error was adequately preserved as to
each of the waived contentions because these contentions were contained within
Exhibit B, which was attached to the motion to exclude and included the
affidavit and expert report of their damages expert, James M. Hill.  We disagree. 
To preserve error, the record must show that the trial court was aware
of the objections advanced in Hill’s report and ruled on them, either expressly
or implicitly. See Tex. R. App.
P. 33.1(a)(1)(A), 33.1(a)(2)(A). 
Plainly, the record shows that neither of those conditions was
fulfilled.

Alternatively, appellants claim that the
trial court should have been aware that additional legal grounds for their
motion to exclude existed and were included in Hill’s report.  However, the content of their motion belies
this claim.  While appellants’ motion
does make periodic references to Hill’s report, such notations cannot be
interpreted to serve as anything more than mere references to Hill’s report for
amplification and support of the statements made within the motion.  While it may be true that, as appellants
suggest, Hill’s expert report was only seven pages long and it would therefore
be “inconceivable that a conscientious trial judge” would not have considered
it, we note that this expert’s report was only one small part of the voluminous
series of documents filed as attachments to their motion to exclude;
altogether, the motion to exclude with attachments consisted of over one
hundred pages.  We do not find it
unreasonable for the trial court under such circumstances to assume that all
legal grounds supporting the ruling sought by the movant are contained in the
motion.





[2]  While
appellants’ fifth contention is actually that Balcombe’s methodology wrongly assumes that “Gymboree Far
East would have purchased the same amount of product it purchased in 2000 for
each year thereafter,” this is not
the exact argument raised in the trial court. 
In the court below, appellants argued that the wrong assumption was that
“Gymboree Far East had the same level of business activity in 2001 that it had
in 2000.”  Therefore, we address only
that portion of the argument that was properly preserved.





[3]  The dissent concludes, based solely
on its interpretation of Jury Question 2, that there is no evidence to support
the jury’s implicit use of the $10.8 million purchase price in calculating
damages because there is no evidence of the value of AW Printing if appellants
had complied with the contract by disclosing the loss of the Gymboree
business.  This argument is not properly
before us because it was not raised in appellants’ initial brief.  Contrary to the dissent’s conclusion, this
technical argument regarding the wording of the charge is not fairly included
within a general sufficiency point focusing on the flaws in expert
testimony.  As the dissent acknowledges,
the appellants made this precise argument repeatedly to the trial court, but
they chose not to include it in their opening brief.  In fact, it was not mentioned on appeal until
a post-submission brief filed in response to questioning at oral argument, and
therefore it is waived. See Zamarron v. Shinko Wire Co., 125 S.W.3d 132,
139 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (complaint waived
because not raised in initial brief); City of Houston v. Precast Structures,
Inc., 60 S.W.3d 331, 340 n.4 (Tex. App.—Houston [14th Dist.] 2001, pet.
denied) (argument raised first time in post-submission brief waived).

Even if the issue were
properly before us, the dissent’s reading of the jury instruction is too
narrow.  We are to read jury instructions
like jurors do—with common sense.  See
City of Brenham v. Honerkamp, 950 S.W.2d 760, 764 (Tex. App.—Austin 1997,
pet. denied); Charter Oak Fire Ins. Co. v. Dewett, 460 S.W.2d 468, 472
(Tex. Civ. App.—Houston [14th Dist.] 1970, writ ref’d n.r.e.); see also
Broughton v. Humble Oil & Ref. Co., 105 S.W.2d 480, 485 (Tex. Civ.
App.—El Paso 1937, writ ref’d) (“Theoretical perfection of expression as to
each isolated sentence is not the end sought, else there would seldom be found
unobjectionable instructions.  Natural,
not strained, constructions should prevail.”). 
If possible, we must interpret the jury’s findings to avoid a
“nonsensical result” and in a manner that upholds the judgment.  Otis Spunkmeyer, Inc. v. Blakely, 30
S.W.3d 678, 685–86 (Tex. App.—Dallas 2000, no pet.); see also Jackson v.
U.S. Fid. & Guar. Co., 689 S.W.2d 408, 412 (Tex. 1985).  A reasonable interpretation of the
instruction is that “the value of AW Printing had [the appellants] complied”
means the value of the contract if no breach had occurred.  In other words, the jury was entitled to conclude
that if the appellants had complied, Checkpoint would have received $10.8
million of value.  Under this
interpretation of the instruction, the purchase price clearly constitutes some
evidence by which the jury could have properly calculated damages.