COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.
2-06-451-CV

 

 

IN THE INTEREST OF 

J.D.B. AND G.N.B.,
CHILDREN                                                               

 

 

                                              ------------

 

             FROM
THE 78TH DISTRICT COURT OF WICHITA COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

Appellant Joyce Lee B.
appeals the trial court=s order
terminating her parental rights to her children J.D.B. and G.N.B.  We affirm.

In her first issue, appellant
argues that the evidence is factually insufficient to support the trial court=s finding that termination was in the children=s best interest. 








In proceedings to terminate
the parent‑child relationship, the State must establish one or more of
the grounds listed under section 161.001(1) of the family code and must also
prove that termination is in the best interest of the child.[2]
 These elements must be
established by clear and convincing evidence, defined as the Ameasure or degree of proof that will produce in the mind of the trier
of fact a firm belief or conviction as to the truth of the allegations sought
to be established.@[3]  Although the two elements must
be proven independently, the same evidence may be probative of both issues.[4]

The trier of fact in a
termination case may use the following factors to determine the best interest
of the children:

(1)    the desires of the children;

 

(2)    the emotional and physical needs of the children now and in the
future; 

 

(3)    the emotional and physical danger to the children now and in the
future; 

 

(4)    the parental abilities of the individuals seeking custody; 

 








(5)    the programs available to assist these individuals to promote the
best interest of the children;

 

(6)    the plans for the children by these individuals or by the agency
seeking custody;

 

(7)    the stability of the home or proposed placement;

 

(8)    the acts or omissions of the parent which may indicate that the
existing parent‑child relationship is not a proper one; and

 

(9)    any excuse for the acts or omissions of the parent.[5]


 

These factors are not exhaustive, and some may be
inapplicable in some cases.[6]  Furthermore, undisputed evidence of just one
factor may be sufficient in a particular case to support a finding that
termination is in the children=s best interest, but the presence of scant evidence relevant to each
factor will not support such a finding.[7]


The evidence in this case
shows as follows:








At the time of trial, J.D.B.,
a male, was eight years old, and G.N.B., his sister, was five.[8]  The Texas Department of Family and Protective
Services (the State) removed the children from appellant=s house on May 17, 2005 due to Aunsanitary and filthy@ conditions that included animal and human feces, dirty dishes
overflowing from the kitchen sink, an extremely dirty and unsanitary bathtub,
toilet, and refrigerator, and the fact that there was very little food in the
house. 

Moreover, for several years
appellant had experienced domestic violence committed by Jake Allery, her
live-in boyfriend and the father of her youngest child.[9]  Appellant filed seven police reports on
Allery from December 2002 to April 2005 and admitted that she had exposed her
children to this environment.  In one of
these incidents, appellant=s youngest child was also a victim. 


Appellant also had a history
of mental illness.  She revealed to the
State that she had been diagnosed with bipolar disorder and post-traumatic
stress disorder.[10]  The State asked appellant to have a
psychiatric evaluation done to determine what types of medications would be
appropriate to treat her mental illnesses, but appellant never did the psychiatric
evaluation.








The trial court entered a
temporary order appointing the State temporary managing conservator of the
children and requiring appellant to attend counseling and weekly parenting
classes, complete a drug and alcohol assessment, refrain from using illegal
drugs, submit to drug testing and a substance abuse treatment program, pay
child support, obtain a job, and maintain a clean, safe, and stable home
environment.  The State conducted a
family group conference with appellant, during which she was again told that
she needed to maintain a clean, safe home and refrain from using drugs in order
for the State to return the children. 
Appellant=s
caseworker, Patricia Barber, also discussed available services with appellant,
including an initial psychological evaluation, counseling, parenting classes,
chemical assessment, and NA and AA meetings for substance abuse treatment.  The parties developed a family service plan
which was approved by the trial court at the status hearing.  








Appellant, however, violated
the court order in several ways, and the programs and services available
remained largely unexplored.  She did not
go to counseling and attended at most one parenting class.[11]  She did not get a drug and alcohol
assessment, did not go to AA meetings, tested positive for amphetamines, methamphetamine,
and marijuana in June 2005, and indicated that she would have tested positive
again in July 2005.  She claimed she paid
$120 in child support in June 2005 but that it did not get credited to her
account.  She did not find employment. 

Further, Barber visited
appellant=s home in
July 2005 and found that it continued to be unsanitary.  The water in the house had been turned off,
there was an Aunbearable@ smell and feces in the toilet, the refrigerator was still dirty and
unsanitary, and a mouse was trying to climb out of the sink.  The rooms and floors were dirty, and filled
garbage bags were stacked inside the home. 


Shortly after Barber=s July 2005 visit, appellant was arrested on suspicion of
manufacturing methamphetamine.  She
pleaded guilty to possession of methamphetamine and was serving a six-year
sentence at the time of the termination trial on November 7, 2006.  While in jail, appellant completed thirty-six
hours in a program called Changes that addressed topics such as domestic
violence, parenting, and job skills.  She
testified that she had a target parole release date of May 2007 if she completed
the Changes program but conceded that she could serve her entire six-year
sentence if she got Ain trouble.@ 








Since the children were
removed from appellant=s custody,
the State attempted three relative placements, and the children=s living arrangements had changed several times.  The State initially placed the children with
their maternal grandparents, the Holts. 
While Mr. Holt was hospitalized out of state and Mrs. Holt went to visit
him, however, the children were left in the care of Christine Rector, appellant=s sister-in-law.  Barber removed
the children from the Holts after learning that there had been a prior
allegation of sexual abuse of G.N.B. by Rector=s husband and that Rector=s son was on probation for aggravated sexual assault of a
seven-year-old. 

The State attempted a second
relative placement with a family in Vernon, Texas, but contact with Mrs. Holt
instigated serious behavioral problems in J.D.B., and the placement lasted less
than one month.  A third attempt at
relative placement with a family in Abilene, Texas failed for similar
reasons.   








At the time of trial, the
children were living with a foster family and doing well.  Barber testified that the foster placement
provided structure and stability, and J.D.B.=s behavioral problems were improving. 
The State=s long term
goal was adoption of the children together, and Barber thought they were Aadoptable@ at the time
of trial.[12]  Appellant wanted to regain the children after
her release, even though she admitted that the environment she provided for
them before the removal was not healthy. 


Based on the above acts and
omissions of appellant, the trial court, as trier of fact, could have concluded
that the children were in emotional and physical danger while in appellant=s custody, their emotional and physical needs were not being met,
appellant=s parenting
abilities were extremely poor, and the existing parent-child relationship was
not proper.[13]  Moreover, the trial court could have inferred
from appellant=s past
conduct endangering the well-being of the children that similar conduct would
recur if the children were returned to her.[14]  It also could have concluded that the State
would provide a more stable home for the children and had preferable plans for
their future.[15]  








Appellant offers her
difficult life events, including mental illness and domestic violence, as
excuses for her acts or omissions.  She
also argues that her July 2005 arrest preempted her compliance with the
programs designed to help her because her counseling and psychological
evaluation appointments were not scheduled to occur until August 2005.  The trial court, however, was free to
conclude that appellant was primarily responsible for her conduct and that her
arrest did not excuse compliance with the court-ordered service plan.[16]  Further, the trial court could have concluded
that although appellant participated in the Changes program, she had not taken
advantage of the majority of the counseling, parenting, and substance abuse
resources available.








Having carefully considered
the evidence in light of the Holley factors and applying the appropriate
standard of review,[17]
we hold that the trial court could have reasonably formed a firm belief or
conviction that termination was in the best interest of the children.  Accordingly, we overrule appellant=s first issue.  In her second issue, appellant claims that she
was denied due process of law because she never received the oral warnings
mandated by sections 263.006 and 262.201(c) of the family code.  These statutes require  the trial court to warn the parent in open
court that Aparental and
custodial rights and duties may be subject to restriction or to termination
unless the parent or parents are willing and able to provide the child with a
safe environment.@[18]  Appellant bears the burden of
presenting a record showing that she never received the warnings.[19]








The record, however, shows
that appellant actually did receive these warnings.  The orders from both the adversary hearing
and the status hearing, which appellant signed, recite the statutory warnings
and indicate that she received notice of the warnings at the hearings.[20]
 Further, appellant waived the making of
a reporter=s record at
both the adversary and status hearing. 
Consequently, there is no reporter=s record showing that the trial court did not give the statutory
warnings at these hearings.  Moreover, at
the trial on termination, appellant testified that she understood that the
State was seeking termination of her parental rights.           

Because the record shows that
appellant did receive the statutorily-mandated warnings, we overrule appellant=s second issue.[21]

Having overruled both of
appellant=s issues, we
affirm the trial court=s judgment.     

PER CURIAM

PANEL A: 
CAYCE, C.J.; HOLMAN and MCCOY, JJ.

DELIVERED: 
August 2, 2007                                











[1]See Tex. R. App. P. 47.4.





[2]Tex. Fam. Code Ann. '
161.001 (Vernon 2002 & Supp. 2006); In re J.L., 163 S.W.3d 79, 84
(Tex. 2005).  Here, the trial court
terminated the parent-child relationship finding three of the statutory grounds
and that termination was in the children=s best interest.  See Tex.
Fam. Code Ann. '
161.001(1)(D), (E), (O), (2).  On appeal,
appellant challenges only the best interest finding.  





[3]Tex. Fam. Code Ann. ''
101.007, 161.001, 161.206(a); In re J.F.C., 96 S.W.3d 256, 263 (Tex.
2002).    





[4]In re
C.H., 89 S.W.3d 17, 28 (Tex. 2002); Tex. Dep=t of
Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987). 





[5]Holley
v. Adams, 544 S.W.2d 367, 371B72
(Tex. 1976).  





[6]C.H., 89
S.W.3d at 27. 





[7]Id.





[8]The
parental rights of J.D.B.=s
father were terminated in 2001, and G.N.B.=s father is deceased. 





[9]That
child is not the subject of this appeal. 





[10]See
In re E.A.W.S., No. 02-06-00031-CV, 2006 WL 3525367, at *10
(Tex. App.CFort
Worth Dec. 7, 2006, pet. denied) (mem. op.) (noting that a parent=s
mental state may be considered in determining whether a child is endangered if
that mental state allows the parent to engage in conduct that jeopardizes the
child=s
physical or emotional well-being).





[11]Appellant=s
first counseling session and initial psychological evaluation were scheduled by
Barber, and appellant was arrested and incarcerated before the appointments occurred.  She was to arrange to attend the parenting
classes, obtain employment, and have the psychiatric intake done on her own
initiative. 





[12]Evidence
about placement plans and adoption are relevant to best interest, but the lack
of evidence about definitive plans for permanent placement is not
dispositive.  C.H., 89 S.W.3d at
28.





[13]See In
re C.A.J., 122 S.W.3d 888, 893B94 (Tex. App.CFort
Worth 2003, no pet.) (noting a parent=s continuous drug use poses
an emotional and physical danger to a child now and in the future); In re
K.M.B., 91 S.W.3d 18, 24 (Tex. App.CFort Worth 2002, no pet.)
(holding living conditions including animal feces, terrible odors, and general
filth endangered children=s
physical or emotional well-being); In re J.R., 991 S.W.2d 318, 322 (Tex.
App.CFort
Worth 1999, no pet.) (noting evidence of abuse and neglect included children=s
exposure to domestic violence).





[14]In re
C.S.C., No. 02-06-00254-CV, 2006 WL 3438185, at *7 (Tex. App.CFort
Worth Nov. 30, 2006, no pet.) (mem. op.).





[15]While
there is evidence that J.D.B. was upset that he could not live with his
grandmother, there is no evidence of the children=s
desires with regard to their mother.  





[16]See C.S.C.,
2006 WL 3438185, at *9 (noting appellant=s own actions caused her to
be put in detention centers and hospitals and therefore not complete her
service plan); In re S.W., No. 02-05-00417-CV, 2006 WL 2988736, at *7
(Tex. App.CFort
Worth Oct. 19, 2006, no pet.) (mem. op.) (affirming best interest finding
despite appellant=s
history of sexual abuse as a child).





[17]See
C.H., 89 S.W.3d at 25 (setting out the elevated appellate standard of
factual sufficiency review in a termination case).





[18]Tex. Fam. Code Ann. '
263.006 (Vernon 2002).  See also Tex. Fam. Code Ann. '
262.201(c) (Vernon 2002 & Supp. 2006).





[19]Jackson
v. U.S. Fid. & Guar. Co., 689 S.W.2d 408, 412 (Tex.
1985); In re G.M., No. 13‑02‑00228‑CV, 2005 WL 375479,
at *2 (Tex. App.CCorpus
Christi Feb. 17, 2005, no pet.) (mem. op.); Vickery v. Comm=n for
Lawyer Discipline, 5 S.W.3d 241, 252 (Tex. App.CHouston
[14th Dist.] 1999, pet. denied).





[20]The
temporary order entered at the adversary hearing recites, AThe
Court finds and hereby notifies the parents that each of the actions required
of them below are necessary to obtain the return of the children, and failure
to fully comply with these orders may result in the restriction or termination
of parental rights.@  

Likewise, the order issued at the status hearing states, AThe
Court finds that [appellant] . . . ha[s] reviewed and understands the service
plan and has been advised that unless [she is] willing and able to provide the
children with a safe environment, even with the assistance of a service plan,
within the reasonable period of time specified in the plan, [her] parental and
custodial duties and rights may be subject to restriction or to termination or
the children may not be returned to [her].@  





[21]Even
if appellant did not receive the statutory warnings in open court at the
required times, nothing in the record suggests that the error probably caused
the rendition of an improper judgment or prevented appellant from properly
presenting her case to this court.  See
Tex. R. App. P. 44.1(a); In re
J.B., 93 S.W.3d 609, 615B17 (Tex. App.CWaco
2002, pet. denied) (applying rule 44.1(a) to a due process argument in a
termination case).