NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, Appellant,

v.

Yolanda DE LA CRUZ, Appellee.

No. 04–88–00237–CV.

Court of Appeals of Texas, San Antonio.

Nov. 30, 1989.

Rehearing Denied Jan. 3, 1990.

John Milano, Jr., Thornton, Summers, Biechlin, Dunham & Brown, San Antonio, for appellant.

Frank Herrera, Jr., Herrera, Vega & Rocha, Thomas Black, San Antonio, for appellee.

Before REEVES, CHAPA and PEEPLES, JJ.

REEVES, Justice.

This appeal involves a worker's compensation suit filed by Yolanda De La Cruz, hereinafter referred to as appellee. National Union Fire Insurance Company of Pittsburgh, Pennsylvania, hereinafter referred to as appellant, complains of a judgment, notwithstanding the verdict, favorable to appellee. We reverse and remand for a new trial.

Appellee was employed as a meat slicer and packer for Roegelein Packing Company from 1972 to March 1985. During this time, she sustained at least three (3) injuries to her hands. A 1978 injury to the right hand required surgery in 1979. In January of 1983, she injured both hands and had surgery on the left hand. Testimony established that after 1983, appellee was never again completely free of pain in either hand. In March of 1985, she informed her supervisor that her hands were hurting. He, in turn, notified Maria Lopez, Roegelein's personnel and safety director. Lopez testified that she had already

learned from appellee's physician, Dr. Joel Rutstein, that appellee was no longer physically capable of doing her job because of the on-going pain. After a personal discussion with appellee, Lopez terminated her employment. In August of 1986, appellee filed suit on Roegelein's worker's compensation policy, claiming that she was totally and permanently incapacitated within the meaning of the Texas Worker's Compensation Act.

The basis of contention in this appeal concerns the questions presented to the jury, reproduced as follows:

### ISSUE NO. 1

Do you find that YOLANDA DE LA CRUZ received an injury to her left hand on or about March 27, 1985, while in the course of her employment with Roegelein Company as the result of repetitious physical traumatic activities extending over a period of time?

(Answer "Yes" or "No.")

ANSWER: Yes

### ISSUE NO. 2

Was the injury a producing cause of any total loss of use of YOLANDA DE LA CRUZ' left hand?

(Answer "Yes" or "No.")

ANSWER: Yes

If you have answered "Yes" to Issue No. 2, then answer Issue Nos. 2A and 2B; otherwise do not answer Issue Nos. 2A and 2B.

### ISSUE NO. 2A

Find the beginning date of such total loss of use. (By stating the month, date, and year.)

ANSWER: March 27, 1985

### ISSUE NO. 2B

Find the duration of such total loss of use. (By answering "permanent" or by stating the ending date.)

ANSWER: Permanent [1]

1. Question number 3 is a conditional question

### ISSUE NO. 4

Do you find that YOLANDA DE LA CRUZ received an injury to her right hand on or about March 27, 1985, while in the course of her employment with Roegelein Company as the result of repetitious physical traumatic activities extending over a period of time?

(Answer "Yes or "No.)

ANSWER: Yes

If you have answered "Yes" to Issue No. 4, then answer Issue No. 5; otherwise do not answer Issue No. 5.

### ISSUE NO. 5

Was the injury a producing cause of any total loss of use of YOLANDA DE LA CRUZ's right hand?

(Answer "Yes" or "No.")

ANSWER: Yes

If you have answered: "Yes" to Issue No. 5, then answer Issue Nos. 5A and 5B; otherwise do not answer Issue Nos. 5A and 5B.

### ISSUE NO. 5A

Find the beginning date of such total loss of use. (By stating month, date and year.)

ANSWER: March 27, 1985

### ISSUE NO. 5B

Find the duration of such total loss of use. (By answering "Permanent" or by stating the ending date.)

ANSWER: Permanent

If you have answered "Yes" to either Issue No. 2 or Issue No. 3, then answer Issue No. 10; otherwise do not answer Issue No. 10.

### ISSUE NO. 10

Do you find that the injury of January 3, 1983, has not contributed to the loss of use of the left hand found by you?

(Answer: "It has not contributed: or "It has contributed")

ANSWER: It has contributed

which was not answered by the jury.

If you have answered "It has contributed" to Issue No. 10, then answer Issue No. 11; otherwise do not answer Issue No. 11.

### ISSUE NO. 11

Find the percentage, if any, that the injury of January 3, 1983, has contributed to the loss of use found by you.

(Answer by giving a percentage, if any).

ANSWER: <u>100%</u>

If you have answered "Yes" to either Issue No. 5 or Issue No. 6, then answer Issue No. 12; otherwise do not answer Issue No. 12.

### ISSUE NO. 12

Do you find that the injury of January 3, 1983, has not contributed to the loss of use of the right hand found by you?

(Answer: "It has not contributed" or "It has contributed")

ANSWER: <u>It has contributed</u>

If you have answered "It has contributed:" to Issue No. 12, then answer Issue No. 13; otherwise do not answer Issue No. 13.

### ISSUE NO. 13

Find the percentage, if any, that the injury of January 3, 1983, has contributed to the loss of use found by you.

(Answer by giving a percentage, if any.)

ANSWER: <u>100%</u>

If you have answered "Yes" to either Issue No. 5 or Issue No. 6, then answer Issue No. 14; otherwise do not answer Issue No. 14.

### ISSUE NO. 14

Do you find that the injury of September 30, 1978, has not contributed to the loss of use of the right hand found by you?

(Answer "It has not contributed" or "It has contributed")

ANSWER: <u>It has contributed</u>

If you have answered "It has contributed" to Issue No. 14, then answer Issue No. 15; otherwise do not answer Issue No. 15.

### ISSUE NO. 15

Find the percentage, if any, that the injury of September 30, 1978, has contributed to the loss of use found by you?

(Answer by giving a percentage, if any.)

ANSWER: <u>100%</u>

Appellant's first six points of error allege that the trial court abused its discretion in disregarding the jury's answers to questions 10 through 15, because there was some evidence to support the answers given by the jury.

By way of counter-points, appellee argues the trial court did not err in disregarding those answers because appellee's right to compensation for the total and permanent loss of use of her hands caused by the injuries of March 27, 1985, as a matter of law, cannot be reduced by conditions caused by any prior injuries. Appellee further avers the trial court did not err in disregarding the jury's answers to questions 10–15 because there is no evidence supporting such answers. As cross-points, appellee argues the jury's answers to these questions are not supported by sufficient evidence and that the jury's answers to some of the questions are in irreconcilable conflict to other answers.

To assess this appeal, this court will first deal with appellee's contention that a prior specific injury, as a matter of law, does not reduce a present specific injury. Appellee argues that the relevant statute (discussed below) applies only when the loss of use resulting from the subsequent injury is less than total and permanent. According to appellee, when the injury to appellee's right and left hands resulted in the total loss of the use of both hands, the statute does not authorize a reduction because of a percentage of prior loss of use caused by previous injuries. At trial, appellee objected to the questions that dealt with contribution by the prior injury. After the jury returned its answers, the trial court, upon

appellee's motion, disregarded and set aside questions 10–15.

In a case where it is alleged that a prior specific injury contributed to a subsequent specific injury, the insurer has a right to jury questions on the allegations where some evidence has been presented that supports the questions. TEX.R. CIV.P. 278. A recent Texas Supreme Court case is helpful here. In *Jackson v. United States Fidelity and Guaranty*, 689 S.W.2d 408 (Tex.1985), the claimant sought compensation for disabling injuries to his left hand. *Id.* at 409. The injury allegedly severed his ring finger and damaged his small and middle fingers, and the jury found these injuries affected his entire hand. *Id.* The insurer alleged two prior injuries to the left thumb caused the incapacity. *Id.* The parties agreed that under TEX.REV.CIV.STAT.ANN. art. 8306, § 12c (Vernon 1988 Supp.), the carrier was not liable for the incapacity resulting from the prior thumb injuries; they did, however, disagree over the effects of the prior injury on the present injury. *Id.* In part the case dealt with the manner in which a question should be worded for purposes of determining how contribution for prior injuries should be calculated. For our purposes, here is a case with a prior specific prior injury and a subsequent specific injury, all to the same general body part, where all courts involved—trial court, Court of Appeals, Supreme Court—did not challenge the submission of jury questions to determine the contribution by a prior specific injury. *Id.* at 410–411.

As to appellee's argument that the statute applies only when a loss of use is less than total and permanent, we find it to be unpersuasive in light of the history of the law. The text of the statute is as follows:

> If an employee who has suffered a previous injury shall suffer a subsequent injury which results in a condition of incapacity to which both injuries or their effects have contributed, the association shall be liable because of such injury only for the compensation to which the subsequent injury would have entitled the injured employee had there been no previous injury; provided that there shall be created a fund known as the "Second Injury Fund," hereinafter described, from which an employee who has suffered a subsequent injury shall be compensated for the combined incapacities resulting from both injuries.

The seminal care interpreting this statute is *Gilmore v. Lumbermen's Reciprocal Association*, 292 S.W. 204 (Tex.Comm'n App.1927, judgment adopted.) In *Gilmore*, the employee lost the sight of one eye due to a childhood accident. Years later, while at work, he was injured and lost the sight in the other eye. The Industrial Accident Board allowed him compensation only for the loss of the use of the one eye injured on the job. On appeal, the court affirmed the Board's decision. In construing the statute (identical to the one cited here), the court said, "The language of the statute is clear and unambiguous, and clearly was intended to limit the liability of the employer to compensation commensurate with the injury suffered by the employee while in his service, and to relieve him from the consequences of injuries *previously sustained* even though both resulted in *permanent total* disability." *Id.* at 205. (Emphasis ours.) The court also said that where "combined injuries resulted in *total disability*, the statute declares that as to the last employer, it shall be treated as a partial disability." *Id.* (Emphasis ours.)

The next instructive case, and the only authority used by appellee, is *Hartford Accident and Indemnity Company v. Leigh*, 57 S.W.2d 605 (Tex.Civ.App.—Eastland 1933, no writ). Leigh, the injured employee, had suffered a twenty-five percent (25%) loss of vision, in his left eye, in 1900. In 1930, he was injured at work and was totally blinded in that eye. The insurance company claimed it should pay only seventy-five percent (75%) of the statutory award. The court disagreed and noted the Statute makes no provision under which the loss of the sight of a good eye draws a greater compensation than the loss of the sight of a defective one. *Id.* at 607. The court specifically held that "where the com-

bined effect of the previous injury and the subsequent injury is to increase the incapacity of the employee beyond that which would have resulted from the subsequent injury alone, the statute would operate. But where ... the condition of incapacity following the subsequent injury is the same as it would have been had there been no previous injury, the statute has no application." *Id.*

The court then noted, "Had the claimant in this case suffered the loss of the sight of his right eye by the previous injury, so that the loss of the sight of his left eye in this subsequent injury resulted in his *total incapacity*, the statute would operate to limit his compensation on account of the subsequent injury to that amount specifically provided for the loss of the sight of an eye, notwithstanding the two injuries resulted in *total permanent incapacity.*" *Id.* (Emphasis added.) Therefore, it is obvious that the statute may operate when the loss of use resulting from the subsequent injury collectively equals total and permanent status.

The next important case to deal with prior and subsequent specific injuries is *Miears v. Industrial Accident Board,* 149 Tex. 270, 232 S.W.2d 671 (Tex.1950). The employee had received an injury, in 1929, which resulted in the total and permanent loss of the sight of his right eye. In 1946, he received an accidental injury which resulted in the total and permanent loss of the sight of his left eye. Though *Miears* dealt with the Second Injury Fund, the court did discuss § 12c and recognized that the problem of the compensation to be awarded to a previously injured worker, when he receives a second injury, has been (and continues to be) troublesome and has led to various attempts at solution by the legislature and the courts. *Id.* 232 S.W.2d at 672.[2] The court noted that the Texas statute was enacted for the benefit of persons, as a class, who enter employment with permanent partial disability. *Id.* at 673. In a 1947 amendment to the act, the legislature recognized that the employee who was totally and permanently disabled as a result of the combined effect of successive injuries received less compensation than would otherwise be awarded for total and permanent disability. *Id.* This led to the Second Injury Fund. *Id.* Therefore, the construction of the act serves the purpose of compensating the injured employee for the total and permanent incapacity he has actually suffered without sacrificing the policy of encouraging the employment of physically handicapped workers. *Id.* The employer's insurer remains liable only for the compensation payable for the second injury considered alone. *Id.*

In 1963, in *Sowell v. The Travelers Insurance Company,* 374 S.W.2d 412, 413 (Tex.1963), the court held that under § 12c, the carrier was entitled to a determination of the percentage of incapacity contributed by prior compensable injury, be it specific or general. Then, in *Texas Employers Insurance Association v. Smith,* 592 S.W.2d 10, 13 (Tex.Civ.App.—Texarkana 1979, no writ), the court held that under the 1977 amendment,[3] the carrier is entitled to present evidence and obtain jury findings on the extent to which the previous injury contributed to the present capacity and is only liable for that percentage of incapacity caused by the later injury. Therefore, we hold that, in the instant case, appellant was entitled to the questions which sought to ascertain whether or not a prior specific injury contributed to a subsequent specific injury. We overrule appellee's counterpoint No. 1.

■ With it clear that appellant is entitled to the questions on contribution, we turn now to appellant's points of error that the trial court abused its discretion in dis-

**2.** *See generally* Sartwelle, Worker's Compensation Survey, 32 S.W.L.J. 304–334 (1978) for a critical discussion of the history and implications of § 12c.

**3.** Prior to 1971, § 12c allowed the insurer the defense of percentage contribution of prior injuries to a present incapacity. 1947 Tex.Gen.Laws Ch. 349 § 1 at 690–691. In 1971, the legislature abolished the defense by providing "the association shall be liable for all compensation provided by the act." 1971 Tex.Gen.Laws Ch. 316 § 1 at 1257. The 1977 amendment readopted the sections precise language as it existed prior to 1971.

regarding the jury's answers to them and granting a judgment notwithstanding the verdict. Appellant argues there is some evidence to support the jury's responses. Appellee, on the other hand, by way of her second counterpoint, asserts there is no evidence, and alternatively (appellee's crosspoint No. 1) there is insufficient evidence to support the jury's answers to questions 10–15. TEX.R.CIV.P. 301 expressly provides that a trial court may disregard any finding that has no support in the evidence. *See Alm v. Aluminum Company of America*, 717 S.W.2d 588, 594 (Tex.1986). In deciding a no-evidence point, as alleged by appellee, we also decide appellant's assertion. Where it is alleged there is no evidence, an appellate court must consider only the evidence and inferences tending to support the findings—for questions No. 10–15 and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

■ A review of the statement of facts reveals that the jury's answers to the disputed issues come from the testimony of the doctor called by appellant, Dr. Robert Jones, who first saw the appellee in 1983 and operated on her left wrist. At trial he testified as follows:

Q. (Mr. Shiely): And I'm going to ask you some questions now, Doctor. And the first one is: Are you able to form an opinion, based on reasonable medical probability, as to what the percentage loss of use might be attributable to Yolanda De La Cruz' left hand as a result of her injury of January 1983?

A. (Dr. Jones): Yes.

Q. And what is that opinion?

A. 10 percent.

Q. And are you able to form an opinion, based on reasonable medical probability, as to percentage loss of use that is attributable to Yolanda De La Cruz' right hand or right wrist as a result of the January 1983 injury?

A. Yes.

Q. And what is that opinion?

A. Zero. None

Q. Why is that?

A. I could never substantiate her subjective symptoms with objective findings.

Q. Okay. Now, assuming that Yolanda De La Cruz has any incapacity to her right wrist or right hand, do you have an opinion as to whether that incapacity was in any way caused by an injury of March 1985?

A. Say that again.

Q. Let me rephrase it if it didn't make any sense.

Assuming that Yolanda De La Cruz has an incapacity or a loss of use of her right wrist or right hand, do you have an opinion as to whether that incapacity was caused by her injury of January 1983?

A. Yes, I do have an opinion.

Q. And what is that opinion?

A. Again, I could find no objective evidence to substantiate an injury to the right hand.

Q. Okay. And assuming she had one, would it have resulted from the January '83 incident or a later one?

A. Well, if anything, I would say it resulted from the injury back in 1979 that resulted in a Carpal Tunnel Syndrome.

Q. Okay. And *assuming* that Yolanda De La Cruz has a loss of use or incapacity to her left hand or wrist, do you have an opinion as to whether that incapacity was caused by the injury of January 1983?

A. Yes.

Q. And what is that opinion?

A. 10 percent disability.

Q. And was that caused by that injury of January '83?

A. Yes.

Q. I'm going to ask you another question, because I believe that the jury is going to be asked to answer this. And that is: *Assuming* that Yolanda De La Cruz has an incapacity or a loss of use of her left wrist, left hand, right wrist or right hand, do you have an opinion as to the percent that the injury of January 1983 contributed to that incapacity?

A. Yes.

Q. And what is that opinion?

A. The left hand, on which I performed surgery, 10 percent.

The right hand, any residual impairment or disability would be due to the injury of 1979, when she had surgery on the right wrist.

Q. Okay. And the question was: What percentage would the January '83 injury have contributed to the total incapacity?

A. Are you speaking of the left?

Q. Of the left. Of the left wrist first.

A. Left wrist would be 10 percent.

Q. Okay. The total incapacity is 10 percent?

A. Yes, to the left hand.

Q. Okay. Would the injury of January 1983 have contributed 100 percent to that total incapacity of 10 percent?

A. Yes.

Q. Okay. And that's the question that I was trying to ask, and I may not be making it clear. But, again, based on reasonable medical probability, talking about the right hand now, do you have an opinion as to what percentage the injury of 1979 would have contributed to any total incapacity that Yolanda De La Cruz suffers to her right wrist or hand?

A. Well, like I said, I couldn't find any disability on the right side.

Q. Okay. *Assuming* that she had any, would it have been caused 100 percent by the injury of 1979?

A. Yes.

Q. And, again, when Yolanda De La Cruz came to see you on May 21st, 1987, were her symptoms and your findings any different than her symptoms and your findings as the result of her January 3rd, 1983 on-the-job injury?

A. No.

Q. Had her condition gotten any worse by May 21st, 1987, so far as you could tell?

A. No.

It is clear that Dr. Jones' opinion was that the 1983 incapacity to the left wrist was ten percent (10%) and that the 1983 injury caused one hundred (100%) of that 10 percent (10%) incapacity. In other words, Dr. Jones opined that after the 1983 surgery, appellee still had the use of ninety percent (90%) of her left hand. It is also his opinion that she had no percentage loss of capacity to the right hand. Based on this testimony, we find that there was some evidence in the record to support the submission of the questions. We further find there was sufficient evidence to support the jury's answers to the questions. Therefore, the trial court erred in disregarding and setting aside the answers. Appellant's first six points of error are sustained and appellee's counterpoint No. 2 and crosspoint No. 1 are overruled. Appellant is entitled to a new trial on this error alone. *Alm v. Aluminum Company of America*, 717 S.W.2d at 594.

We next consider appellee's crosspoint No. 2 which argues that there exist irreconcilable conflicts in certain jury answers. The first cluster of questions establishes that appellee (1) received an injury to her right and left hands on March 27, 1985; (2) the injuries were a producing cause of total loss and (3) the loss was permanent. The second cluster found that (1) appellee's injuries of January 3, 1983, contributed one hundred percent (100%) to the loss that occurred in 1985; (2) the injury of 1978 contributed one hundred percent (100%) to the incapacity of the right hand. In determining whether answers to questions fatally conflict, the court must consider each of the answers claimed to be in conflict, disregarding the alleged conflicting answers but taking into consideration all of the rest of the verdict. *Little Rock Furniture Manufacturing Company v. Dunn*, 148 Tex. 197, 222 S.W.2d 985, 991 (1949). If, so considered, one of the answers would require a judgment in favor of the plaintiff (appellee here) and the other would require a judgment in favor of the defendant (appellant here), then the answers are fatally in conflict. *Id.* The court is then under a duty to reconcile conflicting jury findings if reasonably possible in light of the pleadings and evidence, the manner in which questions were submitted and in view of other findings when considered as a whole. *Butler v. Joseph's Wine Shop, Inc.*, 633 S.W.2d 926, 933 (Tex.

App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.).

 Appellee, in her original petition, alleged that on or about March 27, 1985, she suffered an injury that left her totally and permanently incapacitated. While appellant's first amended original answer attempted to touch all the bases in terms of defenses, the general tenor was that if appellee had, indeed, suffered an injury, it occurred in 1983, not 1985. The evidence gives credence to both sets of pleadings. In fact all the issues revolve around one material fact—appellee's hands were injured while in the course and scope her employment. Appellee's cause depends upon the 1985 date, which the jury found. Appellant claims the actual injury occurred in 1983 and that appellee was never free of symptoms thereafter. The jury found that the 1978 and 1983 and 1985 injuries totally caused the 1985 complaint. Therefore, we find that the jury's answers are in fatal conflict. We further find that these answers cannot be reasonably reconciled and therefore the cause is reversed and remanded for new trial.

PEEPLES, Justice, concurring.

I agree with most of Justice Reeves' opinion. I concur in the remand for a new trial because I think the findings that the 1983 and 1978 injuries caused 100% of the plaintiff's incapacity conflict with the findings that her total loss of use began on March 27, 1985.

CHAPA, Justice, concurring.

I concur in the results.

I agree that the jury answers pertaining to the injuries of 1983 and 1985 are fatally in conflict and should be resolved by a new trial.