607 S.E.2d 711

**Wilma K. PARKER, Respondent,**

v.

**SPARTANBURG SANITARY SEWER DISTRICT
and David Michael Pace, Defendants,**

**of whom Spartanburg Sanitary Sewer District is, Appellant.**

**No. 3915.**

Court of Appeals of South Carolina.

Heard Dec. 7, 2004.
Decided Jan. 4, 2005.

---

Stephen L. Brown and Matthew K. Mahoney, of Charleston, for Appellant.

Kenneth L. Holland, of Gaffney, for Respondent.

ANDERSON, J.:

Wilma K. Parker brought suit against David Michael Pace and his employer, the Spartanburg Sanitary Sewer District (the Sewer District), alleging Pace's negligence proximately caused an automobile accident in which she suffered injuries. The trial judge dismissed Pace from the suit pursuant to the South Carolina Tort Claims Act (the Tort Claims Act), S.C.Code Ann. §§ 15–78–10 to—200 (Supp. 2003). The jury returned a $450,000 verdict against the Sewer District. We affirm in part, reverse in part, and remand.

## FACTUAL/PROCEDURAL BACKGROUND

Parker and Pace were involved in an automobile accident in which Parker suffered injuries. At the time, Pace was driving a van owned by the Sewer District. Parker filed a complaint against Pace and the Sewer District averring Pace's negligence was the direct and proximate cause of her injuries. Parker claimed that, because Pace was acting as an employee of the Sewer District when the accident occurred, Pace's liability was imputed to the Sewer District. In her complaint, Parker stated: "This action as to Spartanburg Sanitary Sewer District is brought under section 15–78–40 et seq., S.C.Code of Laws, the 'S.C. Tort Claims Act.'" The Sewer District did not plead the Tort Claims Act as an affirmative defense in its answer.

On the morning of the first day of trial, the Sewer District filed an amended answer, which asserted:

The Defendants would show the Court that since Defendant Pace was acting within the scope of his employment with the Spartanburg Sanitary Sewer District at the time of the accident complained of and since this action was brought (as to the Spartanburg Sanitary Sewer District) under the South Carolina Tort Claims Act, ... the Plaintiff is entitled to recover only actual damages not to exceed the maximum amount permitted under the applicable provisions of the South Carolina Tort Claims Act.

During the trial, the circuit judge declared:

I didn't see the Amended Answer yesterday. I don't think amended pleadings can be filed without permission of the Court, and particularly after the trial has started.

. . . .

Well, the Answer I have in the file for this trial, there is no defense found.

. . . .

You cannot file it without leave of the Court under the Rules. I don't believe you can file an Amended Complaint that late or an Amended Answer, without permission of the Court.

The Sewer District then moved to amend its answer to comport with the evidence. The judge denied the motion.

At trial, the Sewer District made two requests to introduce evidence of the amounts actually paid by Medicare for services rendered ·to Parker as a result of the accident. The trial judge denied these requests.

The jury returned a verdict for Parker in the amount of $450,000. The Sewer District moved to reduce the amount of damages by $150,000 to reflect the monetary statutory cap on recovery provided in the Tort Claims Act. Specifically, the Sewer District asked "for a reduction to the amount of the cap as pleaded by Mr. Holland in his Complaint, less the property damage already paid to his client." The trial judge denied the motion.

## *LAW/ANALYSIS*

## I.  REDUCTION OF VERDICT

### A.  Vivacity of Pleading/Accedence at Trial

█ The Sewer District argues the trial judge erred in denying its request for a reduction in the jury award to comply with the limitation on recovery as set forth in the South Carolina Tort Claims Act. We agree.

█ The Tort Claims Act governs all tort claims against governmental entities and is the exclusive civil remedy available in an action against a governmental entity or its employees. *Flateau v. Harrelson,* 355 S.C. 197, 584 S.E.2d 413 (Ct.App.2003); *Wells v. City of Lynchburg,* 331 S.C. 296, 501 S.E.2d 746 (Ct.App.1998); *see also* S.C.Code Ann. 15–78–200 (Supp. 2003) ("Notwithstanding any provision of law, this chapter, the South Carolina Tort Claims Act, is the exclusive

and sole remedy for any tort committed by an employee of a governmental entity while acting within the scope of the employees official duty."). South Carolina Code section 15–78–120(a)(1), which pertains to the limitation on liability under the Tort Claims Act, provides:

(a) For any action or claim for damages brought under the provisions of this chapter, the liability shall not exceed the following limits:

(1) Except as provided in Section 15–78–120(a)(3), no person shall recover in any action or claim brought hereunder a sum exceeding three hundred thousand dollars because of loss arising from a single occurrence regardless of the number of agencies or political subdivisions involved.

S.C.Code Ann. 15–78–120(a)(1) (Supp. 2003); *see Wimberly v. Barr,* 359 S.C. 414, 421, 597 S.E.2d 853, 857 (Ct.App.2004) ("With some exceptions, the Tort Claims Act limits the amount of damages recoverable for any claim to $300,000."); *see also Oliver v. South Carolina Dept. of Hwys. and Pub. Transp.,* 309 S.C. 313, 316, 422 S.E.2d 128, 130 (1992) ("The jury awarded Oliver damages in the amount of $3,250,000.00," which the judge reduced to $250,000, "pursuant to the statutory cap" provided in the Tort Claims Act); *Jeter v. South Carolina Dept. of Transp.,* 358 S.C. 528, 532, 595 S.E.2d 827, 829 (Ct.App.2004) ("By consent order, the trial court reduced the verdicts in accordance with the statutory caps set forth in the [Tort Claims] Act."); *Clark v. South Carolina Dept. of Pub. Safety,* 353 S.C. 291, 298, 578 S.E.2d 16, 19 (Ct.App.2002) (in case tried prior to amendment increasing limitation on liability to $300,000, "[t]he trial court reduced the verdict against the Department to $250,000 in accordance with the limit imposed by the Tort Claims Act"); *Smalls v. South Carolina Dept. of Educ.,* 339 S.C. 208, 528 S.E.2d 682 (Ct.App. 2000) (noting that proper method to set off damages awarded against Department of Education under Tort Claims Act by amount of pre-trial settlement paid by private defendant was to reduce jury's verdict by amount of settlement allocated to each cause of action, to then further reduce verdict by plaintiffs comparative negligence, and, finally, to **apply damages cap** under Tort Claims Act).

Parker contends "the trial court did not err in refusing to reduce the verdict to the Tort Claims cap amount based on the fact that Defendants had not properly pled the cap as an affirmative defense which means that they waived it." The cases Parker cites in support of this proposition are distinguishable. In *Steinke v. South Carolina Dept. of Labor, Licensing Regulation,* 336 S.C. 373, 520 S.E.2d 142 (1999), the issue presented on appeal was whether the trial judge erred in denying the defendants motion for a new trial nisi remittitur, in which it asked the judge to reduce the verdicts for the plaintiffs to $250,000 each under the Tort Claims Act. The Supreme Court noted the case was filed "two days before the reinstatement of the limits [of the Tort Claims Act]." *Id.* at 402, 520 S.E.2d at 157. In addition, *Steinke* examined the various statutory exceptions to the waiver of immunity as they related to the defendant. The question of whether the statutory cap is an affirmative defense which is waived if not pled was not discussed. Likewise, *Pike v. South Carolina Dept. of Transp.,* 343 S.C. 224, 540 S.E.2d 87 (2000), does not analyze the issue presented in this appeal. The defendant maintained the verdict should have been reduced to $250,000 in accordance with the reenactment of the statutory cap. The *Pike* court explicated: "The instant action was filed on June 23, 1994[, eight days before the reinstatement of the limits].... Pursuant to *Steinke,* the statutory cap simply does not apply." *Id.* at 236, 540 S.E.2d at 93. Furthermore, *Pike* addressed applicability of the exception to the waiver of immunity for discretionary acts under the Tort Claims Act. This discussion is inapposite to the present issue.

Additionally, the Sewer District did not need to plead the Tort Claims Act statutory cap as an affirmative defense in its answer because Parker already conceded the Tort Claims Act applied to her claim. Parker expressly set forth in her complaint that she brought her cause of action pursuant to the Tort Claims Act. Moreover, upon a motion by the Sewer District to dismiss Pace as a defendant pursuant to section 15–78–80 of the South Carolina Code (Supp.2003), the trial court and Parkers counsel agreed the Tort Claims Act applied to this action:

[Attorney for the Sewer District]: ... I would submit that should you direct a motion to dismiss Mr. Pace, then any

charge related to punitive damages we would object to as irrelevant, in view of the Tort Claim[s] Act.

. . . .

[Attorney for Parker]: ... **Of course, the Tort Claims Act applies.** In this case, we have alleged at the outset of this case—have established that this gentleman's independent gross negligence brought this about.

That makes his employer responsible under the Tort Claims Act, but I don't know of any structure in the law which shields him from personal responsibility.

The Tort Claims Act is real clear that punitives are not recoverable against a State agency or governmental agency under the Tort Claims Act, but I don't know of an umbrella that David Michael Pace is carrying around that keeps that rainful [sic] from coming down on him.

. . . .

The Court: I'm not sure that the individual—I know of nothing that protects the individual from gross negligence, recklessness or willfulness.

However, **the Tort Claims Act would apply to the Sewer District** in regard to the actual damages.

(Emphasis added).

Subsequent to this discussion on the record, the trial judge stated the Tort Claims Act must be raised as an affirmative defense in the answer. However, the judge then granted the Sewer District's motion to dismiss Pace pursuant to the Tort Claims Act.[1] The trial judge's statement that the Tort Claims Act applies to this action and his dismissal of Pace are inconsistent with the judge's failure to apply the monetary statutory cap set out in the Tort Claims Act. Further, Parker is factually and legally bound by her pleading and trial concession: (1) she declared in her complaint that her cause of action is brought under the Tort Claims Act; and (2) at trial, she conceded the Tort Claims Act applies. *See Ex parte McMillan*, 319 S.C. 331, 461 S.E.2d 43 (1995) (by conceding at trial that the complaint was, in part, under the Tort Claims Act, the

---

1. Parker did not appeal the trial court's ruling regarding the dismissal of Pace.

party could not argue on appeal that the case was not under the Tort Claims Act).

The trial judge committed reversible error in denying the Sewer District's request for a reduction in the jury's verdict to conform to the monetary statutory cap set forth in the Tort Claims Act.

## B. Other Jurisdictions

Numerous jurisdictions which have addressed the issue conclude the statutory cap on recovery need not be pled.

In *Mitchell v. State of Louisiana,* 596 So.2d 353 (La.Ct.App. 1992), the plaintiffs, who were injured in an automobile accident, sued the State of Louisiana, through the Department of Transportation and Development. On appeal, the plaintiffs complained "it was error not to rule that the state waived the [statutory] cap ... by its failure to plead the cap as an affirmative defense." *Id.* at 354. The court enunciated:

While we are on the subject of the statutory cap, La.R.S. 13:5106, we will respond to the contention made by the plaintiffs in their answer to the appeal, that the state should not have been permitted to avail itself of the benefit of this cap because of its failure to plead it as an affirmative defense. We find no merit to this argument. The statute does not create an affirmative defense; rather, it imposes a limitation on liability. The plaintiff's petition pleaded general damages. The state in its answer denied the allegations. The subject of the amount of general damages was thus put at issue in the case. The State did not waive its right to invoke the cap by its failure to specifically plead reliance on it as a limitation on its liability.

*Id.* at 357.

The case of *Snyder v. City of Minneapolis,* 441 N.W.2d 781 (Minn.1989), is particularly instructive. Snyder alleged "the limit on municipal liability created by Minn.Stat. § 466.04, [the cap on municipal tort liability,] is an affirmative defense and therefore should have been set forth affirmatively in the City's responsive pleading." *Id.* at 787 (footnote omitted). He averred the City waived the cap on damages because it failed to plead or raise it prior to the completion of trial. The Supreme Court of Minnesota expounded: "We ... hold that

the cap on municipal tort liability provided by Minn.Stat. § 466.04 is not an affirmative defense but a statutory rule of law that trial courts are obliged to impose whenever damages exceed the statutory limit." *Id.* at 788.

The Court of Appeals of Texas, in *Whipple v. Deltscheff,* 731 S.W.2d 700 (Tex.App.1987), elucidated: "A sovereign does not waive the $100,000 limit of liability imposed by the Texas Tort Claims Act by failure to plead and urge it; the damages are strictly limited to those imposed by the statute." *Id.* at 705; *see also Tarrant County Hosp. District v. Henry,* 52 S.W.3d 434, 451 (Tex.App.2001) ("Further, because a sovereign would have no liability absent legislative consent to suit and liability, a sovereign cannot waive the damage limits imposed by the Legislature by failing to plead them.").

There is absolutely no verbiage articulated within the South Carolina Tort Claims Act, sections 15–78–10 to—200 of the South Carolina Code, mandating that a governmental entity plead the monetary statutory cap included within section 15–78–120. The Tort Claims Act is imbued with public policy considerations limiting and qualifying liability of governmental entities. We conclude that the monetary statutory cap is self-executing and the court is required to apply the monetary statutory cap to any jury verdict exceeding $300,000.

## II. MOTION TO AMEND ANSWER

█ Because this court should address all issues in the event of certiorari review, we analyze the motion to amend the answer on an alternative basis for affirmance.

The Sewer District maintains the circuit judge abused his discretion in refusing an amendment to assert the Tort Claims Act limitation on recoverable damages as an affirmative defense. We agree.

Amendments of pleadings are controlled by Rule 15, SCRCP, which provides in pertinent part:

15(a). **Amendments.** A party may amend his pleading once as a matter of course at any time before or within 30 days after a responsive pleading is served or, if the pleading is one to which no responsive pleading is required and the action has not been placed upon the trial roster, he may so

amend it at any time within 30 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; *and leave shall be freely given when justice so requires and does not prejudice any other party.* (Emphasis added).

■ A motion to amend is addressed to the sound discretion of the trial judge. *Stanley v. Kirkpatrick,* 357 S.C. 169, 592 S.E.2d 296 (2004); *City of North Myrtle Beach v. Lewis–Davis,* 360 S.C. 225, 599 S.E.2d 462 (Ct.App.2004). Leave to amend pleadings pursuant to Rule 15, SCRCP, shall be liberally and freely given when justice so requires and does not prejudice any other party. *Crestwood Golf Club, Inc. v. Potter,* 328 S.C. 201, 493 S.E.2d 826 (1997); *Pruitt v. Bowers,* 330 S.C. 483, 499 S.E.2d 250 (Ct.App.1998). The prejudice Rule 15 envisions is a lack of notice that the new issue is going to be tried, and a lack of opportunity to refute it. *Tanner v. Florence County Treasurer,* 336 S.C. 552, 521 S.E.2d 153 (1999); *Lewis–Davis,* 360 S.C. at 232, 599 S.E.2d at 465. The party opposing the amendment has the burden of establishing prejudice. *Foggie v. CSX Transp., Inc.,* 315 S.C. 17, 431 S.E.2d 587 (1993); *Pruitt,* 330 S.C. at 489, 499 S.E.2d at 253. This rule strongly favors amendments and the court is encouraged to freely grant leave to amend. *Jarrell v. Seaboard Sys. R.R.,* 294 S.C. 183, 363 S.E.2d 398 (Ct.App.1987).

In the instant case, the trial judge did not articulate any finding of prejudice with regard to Parker in denying the Sewer Districts motion to amend. In addition, statements by Parkers counsel on the record indicate Parker would not be prejudiced by the Sewer Districts request to amend. Parkers attorney stated: "Of course, the Tort Claims Act applies." When discussing whether Parker consented to the Sewer Districts request to amend, Parkers counsel professed:

He sent me a copy over the weekend in the mail.... Your Honor, I got it and looked at it. I didn't see anything—we did have a conversation, and I didn't see anything new, so I told [counsel for the Sewer District], frankly, in our conversation that I did not have any problem with it at that time.

Parker did not satisfy her burden of establishing prejudice. *See Pruitt v. Bowers,* 330 S.C. 483, 499 S.E.2d 250 (Ct.App.

1998). On the contrary, Parker's complaint and her attorney's comments demonstrated just the opposite.

Further, the Sewer Districts request was not a surprise to Parker. Parker specifically pled the application of the Tort Claims Act in her complaint. Concomitantly, she was not surprised by the Sewer Districts request to limit her amount of recovery pursuant to the Act. The circumstances surrounding the Sewer Districts requests to amend were such that justice would be furthered by allowing it to amend its answer and Parker would not be prejudiced as a result of the amendment. The trial judge abused his discretion in denying the Sewer Districts motion to amend its answer.

### III. MEDICARE PAYMENTS

Finally, the Sewer District asserts the trial judge erred in not allowing it to introduce evidence of amounts actually paid by Medicare toward Parker's total medical bills. The Sewer District argues this evidence was relevant to show Parker's medical expenses were less than the amount reflected in bills she submitted into evidence. The Sewer District complains it was so prejudiced by its inability to introduce this evidence it should be granted a new trial. We disagree.

The decision to admit or exclude evidence is a matter within the sound discretion of the trial judge. *See Clark v. Cantrell*, 339 S.C. 369, 529 S.E.2d 528 (2000); *Gamble v. International Paper Realty Corp.*, 323 S.C. 367, 474 S.E.2d 438 (1996). The court's ruling to admit or exclude evidence will only be reversed if it constitutes an abuse of discretion amounting to an error of law. *R & G Constr., Inc. v. Lowcountry Reg'l Transp. Auth.* 343 S.C. 424, 540 S.E.2d 113 (Ct.App.2000). For an appellate court to reverse based on an erroneous exclusion of evidence by the trial court, the appellant must prove both the error of the ruling and resulting prejudice. *Recco Tape Label Co. v. Barfield*, 312 S.C. 214, 439 S.E.2d 838 (1994); *Ellis v. Davidson*, 358 S.C. 509, 595 S.E.2d 817 (Ct.App.2004).

In the case at bar, the trial judge did not err in denying the Sewer District's request to admit evidence of Medicare payments. This case is analogous to *Covington v. George*, 359

S.C. 100, 597 S.E.2d 142 (2004), a recent South Carolina Supreme Court case. In *Covington,* the defendant, Gary George, appealed the trial judge's decision to exclude evidence that the hospital, which treated the plaintiff, accepted as full payment an amount less than what it billed. *Id.* at 101, 597 S.E.2d at 143. Similar to the case *sub judice,* George did not object to the plaintiff's introduction of the full amount of the hospital's bill, but thereafter sought to introduce the actual payment amount to challenge the reasonableness of the plaintiff's medical expenses. *Id.* at 102–03, 597 S.E.2d at 143–44. The supreme court held the amount a hospital accepted as payment was inadmissible under the collateral source rule. The court inculcated:

> The collateral source rule provides "that compensation received by an injured party from a source wholly independent of the wrongdoer will not reduce the damages owed by the wrongdoer." *Citizens and S. Natl. Bank of South Carolina v. Gregory,* 320 S.C. 90, 92, 463 S.E.2d 317, 318 (1995). A tortfeasor cannot "take advantage of a contract between an injured party and a third person, no matter whether the source of the funds received is 'an insurance company, an employer, a family member, or other source.' " *Pustaver v. Gooden,* 350 S.C. 409, 413, 566 S.E.2d 199, 201 (Ct.App.2002) (citations omitted). In this case, the actual payment amounts were made by a collateral source.

*Id.* at 104, 597 S.E.2d at 144. The court explained the collateral source rule applied because

> any attempts on the part of the plaintiff to explain the compromised payments would necessarily lead to the existence of a collateral source. Inevitably, the inquiry would lead to the introduction of matters such as contractual arrangements between health insurers and health care providers, resulting in the very confusion which the trial judge sought to avoid in his proper application of Rule 403, SCRE.

*Id.* at 104, 597 S.E.2d at 144.

In its brief, the Sewer District cited *Haselden v. Davis,* 353 S.C. 481, 579 S.E.2d 293 (2003), for the proposition that amounts paid by Medicaid may be relevant to determining a reasonable value of medical services and, therefore, this information should be provided to the trier of fact for it to consider in determining damages. *Covington,* however, specifically limited the holding in *Haselden:* "The admissibility of the

actual payment amount was not an appellate issue in *Haselden*, but rather the issue was Plaintiff's entitlement to *recover* the difference between the billed amount and the actual payment amount." *Covington*, 359 S.C. at 103, 597 S.E.2d at 143–44 (emphasis in original).

Based on the holding in *Covington*, the trial judge did not err in excluding evidence of the Medicare payments.

## CONCLUSION

We find the trial judge committed reversible error in denying the Sewer District's request for a reduction in the jury award to comply with the limitation on recoverable damages set forth under the South Carolina Tort Claims Act. We hold that the liability cap articulated within the Tort Claims Act is **NOT** an affirmative defense and the failure to plead the specific limitation on the amount of recovery allowed under the Tort Claims Act is **NOT** a waiver of the cap. We conclude the trial judge abused his discretion in refusing to allow the Sewer District to amend its answer to assert the Tort Claims Act limitation on recoverable damages as an affirmative defense. Finally, we rule the trial judge did not abuse his discretion in excluding evidence of Medicare payments. Accordingly, the decision of the circuit court is

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

STILWELL and SHORT, JJ., concur.