COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-451-CV

IN THE INTEREST OF 

J.D.B. AND G.N.B., CHILDREN 

------------

FROM THE 78TH DISTRICT COURT OF WICHITA COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Joyce Lee B. appeals the trial court’s order terminating her parental rights to her children J.D.B. and G.N.B.  We affirm.

In her first issue, appellant argues that the evidence is factually insufficient to support the trial court’s finding that termination was in the children’s best interest. 

In proceedings to terminate the parent-child relationship, the State must establish one or more of the grounds listed under section 161.001(1) of the family code and must also prove that termination is in the best interest of the child.
(footnote: 2) 
 
These elements must be established by clear and convincing evidence, defined as the
 “measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.”
(footnote: 3) 
 Although the two elements must be proven independently
, the same evidence may be probative of both issues.
(footnote: 4)
 The trier of fact in a termination case may use the following factors to determine the best interest of the children:

(1) the desires of the children;

(2) the emotional and physical needs of the children now and in the future; 

(3) the emotional and physical danger to the children now and in the future; 

(4) the parental abilities of the individuals seeking custody; 

(5) the programs available to assist these individuals to promote the best interest of the children;

(6) the plans for the children by these individuals or by the agency seeking custody;

(7) the stability of the home or proposed placement;

(8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(9) any excuse for the acts or omissions of the parent.
(footnote: 5) 

These factors are not exhaustive, and some may be inapplicable in some cases.
(footnote: 6) 
 Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the children’s best interest, but 
the presence of scant evidence relevant to each
 factor will not support such a finding.
(footnote: 7) 

The evidence in this case shows as follows:

At the time of trial, J.D.B., a male, was eight years old, and G.N.B., his sister, was five.
(footnote: 8)  The Texas Department of Family and Protective Services (the State) removed the children from appellant’s house on May 17, 2005 due to “unsanitary and filthy” conditions that included animal and human feces, dirty dishes overflowing from the kitchen sink, an extremely dirty and unsanitary bathtub, toilet, and refrigerator, and the fact that there was very little food in the house. 

Moreover, for several years appellant had experienced domestic violence committed by Jake Allery, her live-in boyfriend and the father of her youngest child.
(footnote: 9)  Appellant filed seven police reports on Allery from December 2002 to April 2005 and admitted that she had exposed her children to this environment.  In one of these incidents, appellant’s youngest child was also a victim.  

Appellant also had a history of mental illness.  She revealed to the State that she had been diagnosed with bipolar disorder and post-traumatic stress disorder.
(footnote: 10)  The State asked appellant to have a psychiatric evaluation done to determine what types of medications would be appropriate to treat her mental illnesses, but appellant never did the psychiatric evaluation.

The trial court entered a temporary order appointing the State temporary managing conservator of the children and requiring appellant to attend counseling and weekly parenting classes, complete a drug and alcohol assessment, refrain from using illegal drugs, submit to drug testing and a substance abuse treatment program, pay child support, obtain a job, and maintain a clean, safe, and stable home environment.  The State conducted a family group conference with appellant, during which she was again told that she needed to maintain a clean, safe home and refrain from using drugs in order for the State to return the children.  Appellant’s caseworker, Patricia Barber, also discussed available services with appellant, including an initial psychological evaluation, counseling, parenting classes, chemical assessment, and NA and AA meetings for substance abuse treatment.  The parties developed a family service plan which was approved by the trial court at the status hearing.  

Appellant, however, violated the court order in several ways, and the programs and services available remained largely unexplored.  She did not go to counseling and attended at most one parenting class.
(footnote: 11)  She did not get a drug and alcohol assessment, did not go to AA meetings, tested positive for amphetamines, methamphetamine, and marijuana in June 2005, and indicated that she would have tested positive again in July 2005.  She claimed she paid $120 in child support in June 2005 but that it did not get credited to her account.  She did not find employment. 

Further, Barber visited appellant’s home in July 2005 and found that it continued to be unsanitary.  The water in the house had been turned off, there was an “unbearable” smell and feces in the toilet, the refrigerator was still dirty and unsanitary, and a mouse was trying to climb out of the sink.  The rooms and floors were dirty, and filled garbage bags were stacked inside the home.  

Shortly after Barber’s July 2005 visit, appellant was arrested on suspicion of manufacturing methamphetamine.  She pleaded guilty to possession of methamphetamine and was serving a six-year sentence at the time of the termination trial on November 7, 2006.  
While in jail, appellant completed thirty-six hours in a program called Changes that addressed topics such as domestic violence, parenting, and job skills.  
She testified that she had a target parole release date of May 2007 if she completed the Changes program but conceded that she could serve her entire six-year sentence if she got “in trouble.” 

Since the children were removed from appellant’s custody, the State attempted three relative placements, and the children’s living arrangements had changed several times.  The State initially placed the children with their maternal grandparents, the Holts.  While Mr. Holt was hospitalized out of state and Mrs. Holt went to visit him, however, the children were left in the care of Christine Rector, appellant’s sister-in-law.  Barber removed the children from the Holts after learning that there had been a prior allegation of sexual abuse of G.N.B. by Rector’s husband and that Rector’s son was on probation for aggravated sexual assault of a seven-year-old. 

The State attempted a second relative placement with a family in Vernon, Texas, but contact with Mrs. Holt instigated serious behavioral problems in J.D.B., and the placement lasted less than one month.  A third attempt at relative placement with a family in Abilene, Texas failed for similar reasons.   

At the time of trial, the children were living with a foster family and doing well.  Barber testified that the foster placement provided structure and stability, and J.D.B.’s behavioral problems were improving.  The State’s long term goal was adoption of the children together, and Barber thought they were “adoptable” at the time of trial.
(footnote: 12)  Appellant wanted to regain the children after her release, even though she 
admitted that the environment she provided for them before the removal was not healthy.  

Based on the above acts and omissions of appellant, the trial court, as trier of fact, could have concluded that
 the children were in emotional and physical danger while in appellant’s custody, their emotional and physical needs were not being met, appellant’s parenting abilities were extremely poor, and the existing parent-child relationship was not proper.
(footnote: 13) 
 Moreover, the trial court could have inferred from appellant’s past conduct endangering the well-being of the children that similar conduct would recur if the children were returned to her.
(footnote: 14)  It also could have concluded that the State would provide a more stable home for the children and had preferable plans for their future.
(footnote: 15) 
 

Appellant offers her difficult life events, including mental illness and domestic violence, as excuses for her acts or omissions.  
She also argues that her July 2005 arrest preempted her compliance with the programs designed to help her because her counseling and psychological evaluation appointments were not scheduled to occur until August 2005.  
The trial court, however, was free to conclude that appellant was primarily responsible for her conduct and that her arrest did not excuse compliance with the court-ordered service plan.
(footnote: 16)  Further, the trial court could have concluded that although appellant participated in the Changes program, she had not taken advantage of the majority of the counseling, parenting, and substance abuse resources available.

Having carefully considered the evidence in light of
 the 
Holley
 factors
 and applying the appropriate standard of review,
(footnote: 17) we hold that the trial court could have reasonably formed a firm belief or conviction that termination was in the best interest of the children.  
Accordingly, we overrule appellant’s first issue.  
 In her second issue, appellant claims 
that she was denied due process of law because she never received the oral warnings mandated by sections 263.006 and 262.201(c) of the family code.  These statutes require  the trial court to warn the parent in open court that “parental and custodial rights and duties may be subject to restriction or to termination unless the parent or parents are willing and able to provide the child with a safe environment
.”
(footnote: 18)  Appellant bears the burden of presenting a record showing that she never received the warnings.
(footnote: 19)
 The record, however, shows that appellant actually did receive these warnings.  
The orders from both the adversary hearing and the status hearing, which appellant signed, recite the statutory warnings and indicate that she received notice of the warnings at the hearings.
(footnote: 20)  Further, appellant waived the making of a reporter’s record at both the adversary and status hearing.  Consequently, there is no reporter’s record showing that the trial court did not give the statutory warnings at these hearings.  Moreover, at the trial on termination, appellant testified that she understood that the State was seeking termination of her parental rights.     

Because the record shows that appellant did receive the statutorily-mandated warnings, we overrule appellant’s second issue.
(footnote: 21)
 Having overruled both of appellant’s issues, we affirm the trial court’s judgment. 

PER CURIAM

PANEL A:  CAYCE, C.J.; HOLMAN and MCCOY, JJ.

DELIVERED:  August 2, 2007 
 

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Tex. Fam. Code Ann.
 § 161.001 (Vernon 2002 & Supp. 2006)
; 
In re J.L.
, 163 S.W.3d 79, 84 (Tex. 2005).  
Here, the trial court terminated the parent-child relationship finding three of the statutory grounds and that termination was in the children’s best interest.  
See
 
Tex. Fam. Code Ann.
 § 161.001(1)(D), (E), (O), (2).  On appeal, appellant challenges only the best interest finding. 
 

3:
Tex. Fam. Code Ann.
 §§ 101.007, 161.001, 161.206(a); 
In re J.F.C.
, 96 S.W.3d 256, 263 (Tex. 2002)
. 
 
 
 

4:
In re C.H.
, 89 S.W.3d 17, 28 (Tex. 2002);
 Tex. Dep’t of Human Servs. v. Boyd
, 727 S.W.2d 531, 533 (Tex. 1987). 

5:
Holley v. Adams
, 544 S.W.2d 367, 371–72 (Tex. 1976).  

6:
C.H
., 89 S.W.3d at 27. 

7:
Id.

8:
The parental rights of J.D.B.’s father were terminated in 2001, and G.N.B.’s father is deceased. 

9:
That child is not the subject of this appeal. 

10:
See In re E.A.W.S.
, No. 02-06-00031-CV, 2006 WL 3525367, at *10 (Tex. App.—Fort Worth Dec. 7, 2006, pet. denied) (mem. op.) (noting that a parent’s mental state may be considered in determining whether a child is endangered if that mental state allows the parent to engage in conduct that jeopardizes the child’s physical or emotional well-being).

11:
Appellant’s first counseling session and initial psychological evaluation were scheduled by Barber, and appellant was arrested and incarcerated before the appointments occurred.  She was to arrange to attend the parenting classes, obtain employment, and have the psychiatric intake done on her own initiative. 

12:
Evidence about placement plans and adoption are relevant to best interest, but the lack of evidence about definitive plans for permanent placement is not dispositive.  
C.H.
, 89 S.W.3d at 28.

13:
See
 
In re C.A.J.
, 122 S.W.3d 888, 893–94 (Tex. App.—Fort Worth 2003, no pet.) (noting a parent’s continuous drug use poses an emotional and physical danger to a child now and in the future); 
In re K.M.B.
, 91 S.W.3d 18, 24 (Tex. App.—Fort Worth 2002, no pet.) (holding living conditions including animal feces, terrible odors, and general filth endangered children’s physical or emotional well-being); 
In re J.R.
, 991 S.W.2d 318, 322 (Tex. App.—Fort Worth 1999, no pet.) (noting evidence of abuse and neglect included children’s exposure to domestic violence).

14:
In re C.S.C.
, No. 02-06-00254-CV, 2006 WL 3438185, at *7 (Tex. App.—Fort Worth Nov. 30, 2006, no pet.) (mem. op.)
.

15:
While there is evidence that J.D.B. was upset that he could not live with his grandmother, there is no evidence of the children’s desires with regard to their mother.  

16:
See C.S.C.
, 2006 WL 3438185, at *9 (noting appellant’s own actions caused her to be put in detention centers and hospitals and therefore not complete her service plan);
 In re S.W.
, No. 02-05-00417-CV, 2006 WL 2988736, at *7 (Tex. App.—Fort Worth Oct. 19, 2006, no pet.) (mem. op.) (affirming best interest finding despite appellant’s history of sexual abuse as a child).

17:
See C.H.
, 89 S.W.3d at 25 (setting out the elevated appellate standard of factual sufficiency review in a termination case).

18:
Tex. Fam. Code Ann.
 § 263.006 (Vernon 2002).  
See also 
Tex. Fam. Code Ann.
 § 262.201(c) (Vernon 2002 & Supp. 2006).

19:
Jackson v. U.S. Fid. & Guar. Co.
, 689 S.W.2d 408, 412 (Tex. 1985);
 
In re G.M.
, No. 13-02-00228-CV, 2005 WL 375479, at *2 (Tex. App.—Corpus Christi Feb. 17, 2005, no pet.) (mem. op.); 
Vickery v. Comm’n for Lawyer Discipline
, 5 S.W.3d 241, 252 (Tex. App.—Houston [14th Dist.] 1999, pet. denied).

20:
The temporary order entered at the adversary hearing recites, “The Court finds and hereby notifies the parents that each of the actions required of them below are necessary to obtain the return of the children, and failure to fully comply with these orders may result in the restriction or termination of parental rights.”  

Likewise, the order issued at the status hearing states, “The Court finds that [appellant] . . . ha[s] reviewed and understands the service plan and has been advised that unless [she is] willing and able to provide the children with a safe environment, even with the assistance of a service plan, within the reasonable period of time specified in the plan, [her] parental and custodial duties and rights may be subject to restriction or to termination or the children may not be returned to [her].”  

21:
Even if appellant did not receive the statutory warnings in open court at the required times, nothing in the record suggests that the error probably caused the rendition of an improper judgment or prevented appellant from properly presenting her case to this court.  
See
 
Tex. R. App. P.
 44.1(a)
; 
In re J.B.
, 93 S.W.3d 609, 615–17 (Tex. App.—Waco 2002, pet. denied) (applying rule 44.1(a) to a due process argument in a termination case).